THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TERRELL BEASLEY, Defendant-Appellant.

First District (5th Division) No. 1—86—3095

Opinion filed November 16, 1990.

Michael J. Pelletier and Martin Carlson, both of State Appellate Defender's Office, and McCollough, Campbell & Lane, both of Chicago (David E. Schroeder, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb, Paul Gliatta, and Karlene Behringer, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LORENZ delivered the opinion of the court:

Defendant, Terrell Beasley, appeals from his convictions for murder and two counts of attempted murder. (Ill. Rev. Stat. 1985, ch. 38, pars. 8—4, 9—1(a)(1).) We address the following three issues: (1) whether the trial judge's denial of defendant's motion to suppress his statement was manifestly erroneous; (2) whether defendant was de-

nied equal protection when he was tried as an adult; and (3) whether the trial judge properly sentenced defendant as an adult. We affirm defendant's convictions.

Defendant, who was 16 years old, was arrested in his home on March 3, 1985, for a shooting that occurred in a photography studio on March 2, 1985. One person was killed and two were injured. After his arrest, defendant gave a statement to police, and prior to trial he moved to suppress it based on his warrantless arrest. At the hearing on defendant's motion, the following evidence was presented.

During the investigation of the shooting, police obtained the physical description of one of the men involved and learned his nickname was Porky. Based on information that defendant was Porky, six police officers in plain clothes went to defendant's house at 2:30 a.m., on March 3, 1985, without an arrest warrant. Four officers went to the front door and the remaining two officers guarded the back door. The four officers who went to the front door testified at the hearing on defendant's motion to suppress.

Detective Bogucki and his partner, Detective Raymond Schalk, testified that defendant's mother answered the door and allowed the officers to enter the house. The officers stayed in the front room while defendant's mother woke up defendant. He fit the description of the man they were looking for, and he admitted his nickname was Porky. Defendant was arrested and taken to the police station.

Officer William Wagner and his partner, Officer Joe Rodriguez, however, testified that a young woman answered the door and said she would wake up defendant's mother. The woman allowed the officers to enter the house. Rodriguez testified that the woman told them to wait in the living room while she woke up defendant's mother. After defendant's mother spoke with the officers, they followed her to a bedroom where she woke up defendant. Defendant confirmed his nickname was Porky, and the officers took defendant to the police station. Wagner also testified that they did not believe defendant was armed.

Ms. Kimberly Knight, a 19-year-old woman who was a friend of defendant's family, testified that she answered the door for the police officers. Knight told them to wait at the door while she woke up defendant's mother but she did not give them permission to enter. After Knight left to wake up defendant's mother, the officers entered the house. She told them that they could not come in and asked them to wait outside. An officer told her to "shut up" and went to the bedroom. At that time, defendant's mother came out of another bedroom and told the police to leave. The officers woke up defendant and told him they wanted to take him to the station for questioning.

Ms. Carolyn Figures, a 23-year-old woman who was also a friend of defendant's family, testified that Knight answered the door. When Knight left to wake up defendant's mother, Figures went to the door and spoke with the police. Figures testified that she did not give the officers permission to enter; however, when she walked away from the door, the officers entered the house. Defendant's mother came out of her bedroom and told the officers to get out. The officers took defendant to the police station.

Mrs. Christine Beasley, defendant's 37-year-old mother, testified that she was sleeping and woke up when she heard Knight scream, " 'Stay out.' " She came out of her bedroom and saw the police officers inside the house. She told them to get out. She denied that she answered the door and allowed the police to enter. She testified that neither Knight nor Figures lived at the house.

The trial judge found that the police had probable cause to arrest defendant and exigent circumstances justified the officers' warrantless entry into defendant's house. Alternatively, the judge found that Knight, with apparent authority, consented to the officers' entry. He believed Detectives Bogucki and Schalk were mistaken as to the identity of the person who answered the door but each of the police officers' testimony supported the conclusion that they were given consent to enter. As a result, defendant's motion to suppress was denied.

In a jury trial, the State presented evidence that on March 2, 1985, at approximately 4:15 p.m., a man wearing a ski mask entered a photography studio on North Avenue and fired several shots at a group of people. Another man was behind him. Carlos Romero, a 13-year-old boy, was killed, and Ramon and Jamie Bucio were injured.

Tommy Hernandez testified that in the afternoon of March 2, he was in the alley behind his house and saw defendant, whom he knew as Porky, and another man, whom he knew as Keto, walking toward North Avenue. Both Porky and Keto were members of a gang. Shortly thereafter, he heard gunshots and saw defendant and another person wearing a ski mask running down the alley. The person wearing the ski mask was wearing the same clothes Keto had on earlier.

Officer Schalk testified that on March 3 at 5:30 p.m., after defendant was arrested, taken to the police station, and given *Miranda* warnings, he gave a statement. Defendant told police that his nickname was Porky and he and Keto were members of a gang. On the day of the shooting, Keto said they were going to "burn" some members of a rival gang. They went to the photography studio, and Keto kicked the door open and started shooting. Defendant was behind him. Afterward, defendant and Keto ran away.

The State rested its case against defendant.

Defendant presented one witness, Rosie Valldeperes, who was present at the photography studio at the time of the shooting and testified that she did not see anyone behind the gunman.

The jury found defendant guilty of one count of murder and two counts of attempted murder. Defendant filed a motion for new trial which was denied.

At the sentencing hearing, defendant presented two witnesses in mitigation, a counsellor and a teacher from his high school. The witnesses testified that defendant was in classes for "educationable mentally handicapped" students which meant he was functioning at lower than average mental capability. Defendant was sentenced to concurrent prison terms of 30 years for murder and 25 years for each count of attempted murder.

Subsequently, defendant filed a supplemental motion for new trial and for reconsideration of sentence. Defendant argued he was entitled to a new trial based on new evidence discovered during the sentencing hearing that defendant was an educable, mentally handicapped student. Defendant presented a psychologist, Alan K. Rosenwald, who testified that defendant was "borderline mental defective." Due to defendant's limited vocabulary development and inability to recognize the words used, Rosenwald had the opinion that defendant had a minimal understanding of *Miranda* warnings and he was not able to effectively participate in his defense. Defendant also argued that his sentence was excessive. The trial judge denied the motion and defendant filed a notice of appeal.

OPINION

Initially, we consider whether the trial judge's denial of defendant's motion to suppress evidence was erroneous. The trial judge found that although the police did not have a warrant, either exigent circumstances or consent justified their entry into defendant's home to arrest him. As a result of the ruling, the statement defendant gave at the police station was admitted in evidence at trial. The trial court's ruling on a motion to suppress will not be disturbed unless it was clearly erroneous. *People v. Foskey* (1990), 136 Ill. 2d 66, 554 N.E.2d 192.

Assuming for the purpose of argument that defendant's warrantless arrest violated his constitutional rights against unreasonable search and seizure, we must consider the effect of a recent United States Supreme Court opinion on the question of whether defendant's statement was admissible at trial. In *New York v. Harris* (1990), 495

U.S. 14, 109 L. Ed. 2d 13, 110 S. Ct. 1640, the Supreme Court held that although the police made a warrantless, nonconsensual entry into defendant's home to arrest him, his statement made outside the home was admissible because the police had probable cause to arrest.

In *Harris*, the police had probable cause to arrest defendant for murder. Although they did not have a warrant and were not given consent, they entered defendant's home and arrested him. After he was taken to the police station and read his *Miranda* rights, defendant signed a written statement which he subsequently moved to suppress. The trial judge denied the motion, and the statement was admitted in evidence at trial. On appeal from his conviction, defendant in *Harris* argued that the statement should have been suppressed because under the fourth amendment the police were prohibited from entering his home to arrest him if they did not have a warrant or consent to enter, as held in *Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371.

The United States Supreme Court in *Harris* found that although defendant's arrest violated *Payton*, his statement at the police station was admissible. The court in *Harris* stated:

> "[W]e decline to apply the exclusionary rule in this context because the rule in *Payton* was designed to protect the physical integrity of the home; it was not intended to grant criminal suspects *** protection for statements made outside their premises where the police have probable cause to arrest the suspect for committing a crime.
> ***
> Nothing in the reasoning of [*Payton*] suggests that an arrest in a home without a warrant but with probable cause somehow renders unlawful continued custody of the suspect once he is removed from the house." (*Harris*, 495 U.S. at 17-18, 109 L. Ed. 2d at 20, 110 S. Ct. at 1643.)

However, a violation of *Payton* will justify suppressing evidence or statements obtained inside the home. *Harris*, 495 U.S. 14, 109 L. Ed. 2d 13, 110 S. Ct. 1640.

The Court distinguished *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254, where defendant's statements were suppressed as fruits of the poisonous tree because they had a "sufficiently close relationship" to an arrest without probable cause. (*Harris*, 495 U.S. at 19, 109 L. Ed. 2d at 21, 110 S. Ct. at 1643; see *Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407.) Conversely, in *Harris*, defendant was in lawful custody at the time he made the statement because the police had probable

cause to arrest. Therefore, his statement given at the police station was not "an exploitation" of the police officers' illegal entry into his home and was admissible at trial. *Harris*, 495 U.S. at 19, 109 L. Ed. 2d at 21, 110 S. Ct. at 1644.

██ In the present case, defendant does not challenge the trial court's ruling that the police had probable cause to arrest him when they entered his home. Defendant argued that neither exigent circumstances nor consent justified the police officers' entry and, therefore, his statement should have been suppressed. Under *Harris*, these questions are irrelevant as the statement defendant sought to suppress was not obtained inside his home. Rather, defendant sought to suppress his statement which he gave at the police station after his arrest. Such a statement is admissible under *Harris* despite a violation of *Payton*. Therefore, the trial court's denial of defendant's motion to suppress was not manifestly erroneous.

Defendant accepts that *Harris* disposes of his argument that the statement was inadmissible because the police violated the fourth amendment. Alternatively, defendant urges this court to disregard *Harris* and grant greater protection under article I, section 6, of the 1970 Illinois Constitution (Ill. Const. 1970, art. I, §6) which, similar to the fourth amendment, prohibits unreasonable searches and seizures.

Defendant argues that the Illinois Supreme Court applied an exclusionary rule in *People v. Brocamp* (1923), 307 Ill. 448, 138 N.E. 728, before the Federal exclusionary rule was applied to the States in *Mapp v. Ohio* (1961), 367 U.S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684. In *Brocamp*, the court held that evidence obtained in an illegal search of defendant's home should not have been admitted at trial. *Brocamp* is consistent with *Harris*, which stated that an illegal entry into defendant's home will justify the suppression of evidence obtained in the home. In the present case, however, defendant sought to suppress the statement he gave at the police station.

The Illinois Supreme Court has acknowledged that in the past it has elected to adopt the United States Supreme Court's construction of the fourth amendment when construing section 6 of article I of the State Constitution, although it is not required to do so. (*People v. Tisler* (1984), 103 Ill. 2d 226, 469 N.E.2d 147.) The court in *Tisler* stated:

> "After having accepted the pronouncements of the Supreme Court in deciding fourth amendment cases as the appropriate construction of the search and seizure provisions of the Illinois Constitution for so many years, we should not suddenly change course and go our separate way simply to accommodate the de-

sire of the defendant to circumvent what he perceives as a narrowing of his fourth amendment rights ***. Any variance between the Supreme Court's construction of the provisions of the fourth amendment in the Federal Constitution and similar provisions in the Illinois Constitution must be based on more substantial grounds. We must find in the language of our constitution, or in the debates and the committee reports of the constitutional convention, something which will indicate that the provisions of our constitution are intended to be construed differently than are similar provisions in the Federal Constitution, after which they are patterned." (*Tisler*, 103 Ill. 2d at 245, 469 N.E.2d at 157.)

The court noted that the constitutional convention intended to extend the protection of the fourth amendment to include new protections against invasions of privacy and eavesdropping in section 6 of article I. (See also Ill. Ann. Stat., 1970 Const., art. I, §6, Constitutional Commentary, at 317 (Smith-Hurd 1971) (the section expanded upon the individual rights of the previous version of the section and the guarantees of both the fourth and fourteenth amendments).) However, the convention did not intend to "expand the nature of the protection afforded by the fourth amendment." (*Tisler*, 103 Ill. 2d at 242, 469 N.E.2d at 155.) As a result, the court in *Tisler* followed the Supreme Court's construction of the fourth amendment in construing article I, section 6, of the State Constitution.

A special concurrence and a dissent criticized the majority's approach. (*Tisler*, 103 Ill. 2d 226, 469 N.E.2d 147 (Clark, J., specially concurring; Goldenhersh, J., dissenting, joined by Simon, J.).) Justice Clark noted in his special concurrence:

"[T]he majority's stance on this issue is dangerous because it limits our power to interpret our own State Constitution in the future. ***

Under the majority's analysis, this court would be precluded from protecting the civil liberties of Illinois citizens should the United States Supreme Court decide to consistently favor police efficiency over the rights of the accused. Although the majority's reasoning may seem harmless today, it would preclude this court from protecting the individual liberties of Illinois citizens should such protection become essential in the future." (*Tisler*, 103 Ill. 2d at 259, 469 N.E.2d at 163-64 (Clark, J., specially concurring).)

Similarly, Justice Goldenhersh noted that the court was not required to " 'blindly follow' " the United States Supreme Court. *Tisler*, 103

Ill. 2d at 264, 469 N.E.2d at 166 (Goldenhersh, J., dissenting, joined by Simon, J.), quoting *People v. Exline* (1983), 98 Ill. 2d 150, 157, 456 N.E.2d 112 (Goldenhersh, J., dissenting).

■ In resolving the issue of whether we should adopt the reasoning of *Harris* in construing section 6 of article I of the State Constitution, we must be guided by the majority opinion in *Tisler*. The court acknowledged that it had the power to break from the Supreme Court's interpretation of the fourth amendment but declined to "suddenly change course" from its previous decisions which paralleled the Supreme Court without "substantial grounds" to do so. (*Tisler*, 103 Ill. 2d at 245, 469 N.E.2d at 157.) Accordingly, we believe *Harris* is applicable to the present case and, as a result, we must reject defendant's argument that the trial judge erroneously denied his motion to suppress.

Defendant also argues that his equal protection rights were violated when he was tried as an adult under section 2—7(6)(a) of the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 702—7(6)(a) (current version at Ill. Rev. Stat. 1989, ch. 37, par. 805—4(6)(a))). As an exception to juvenile court jurisdiction, section 2—7(6)(a) provides that a minor would be tried as an adult if he was at least 15 years old at the time of the crime and was charged with murder or certain other Class X felonies. In this case, defendant was tried as an adult because he was 16 years old at the time of the crime and he was charged with murder. He contends that he was denied equal protection because he was prosecuted under an accountability theory and because he was "mentally defective."

■ This argument was not raised in the trial court. In his motion for new trial, defendant argued that the Juvenile Court Act was only intended to apply to principals but he did not contend that the act violated equal protection. The failure to raise an issue in the trial court can result in a waiver of that issue on appeal (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124); however, plain errors or defects affecting substantial rights may be considered on appeal although they were not raised in the trial court (134 Ill. 2d R. 615(a)). We do not believe that plain error occurred in this case because the supreme court has held that the section does not violate equal protection. *People v. M.A.* (1988), 124 Ill. 2d 135, 529 N.E.2d 492; *People v. J.S.* (1984), 103 Ill. 2d 395, 469 N.E.2d 1090.

Lastly, defendant argues that the trial judge erred in sentencing him as an adult. At the time defendant was sentenced on May 22, 1986, section 2—7(6)(c) of the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 702—7(6)(c) (current version at Ill. Rev. Stat. 1989, ch. 37,

par. 805—4(6)(c))) provided that if a minor was tried as an adult and convicted of an offense listed in section 2—7(6)(a), the trial judge had the option to sentence defendant as an adult under Chapter V of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—1—1 *et seq.*) or as a juvenile under Article 5 of the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 705—1 *et seq.*). Defendant argues his sentence should be vacated and remanded for a new sentencing hearing because the judge did not consider the option to sentence defendant as a juvenile.

At the sentencing hearing, defendant's attorney did not request the trial judge to sentence defendant as a juvenile and instead requested a prison term of 20 years, which was the minimum sentence for murder under section 5—8—1(a)(1)(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(1)(a)). The judge sentenced defendant as an adult to prison terms of 30 years for murder and 25 years for each count of attempted murder, to run concurrently. Although defendant subsequently filed a motion for reconsideration of sentence, he failed to raise this issue.

■ It cannot be presumed that the trial judge was unaware of the option to sentence defendant as a juvenile. (*People v. White* (1989), 180 Ill. App. 3d 1032, 536 N.E.2d 812.) Where defendant's attorney invited the trial judge to sentence defendant as an adult, defendant cannot claim on appeal that the judge abused his discretion in sentencing him as an adult. (*People v. Berryman* (1988), 171 Ill. App. 3d 548, 526 N.E.2d 180.) Accordingly, there is no basis to vacate defendant's sentence.

Affirmed.

MURRAY and GORDON, JJ., concur.