**UNITED STATES of America, Plaintiff–Appellee,**

v.

**John A. DELAPORTE, Defendant– Appellant.**

**No. 94–1407.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 13, 1994.

Decided Dec. 19, 1994.

---

Tina Nommay, Asst. U.S. Atty. (argued), Fort Wayne, IN, for plaintiff-appellee.

James J. Abbs (argued), Emerick & Diggins, Kendallville, IN, for defendant-appellant.

Before POSNER, Chief Judge, and BAUER and FLAUM, Circuit Judges.

POSNER, Chief Judge.

The defendant was sentenced to 12 years in prison for raising marijuana and for a related firearm offense. He contends that some of the evidence used against him had been obtained by Indiana law enforcement officers in violation of an Indiana law governing telephone warrants and had been turned over to federal prosecutors. He points out that a federal officer who obtains evidence in violation of federal law can be enjoined from using the evidence in a state criminal prosecution, *Rea v. United States*, 350 U.S. 214, 76 S.Ct. 292, 100 L.Ed. 233 (1956), and he argues that evidence obtained in violation of state law should likewise be barred from use in a federal prosecution. *Rea* has little or no contemporary significance, now that the exclusionary rule of the Fourth Amendment applies to state as well as federal prosecutions. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). But it has not been overruled.

Appealingly symmetrical as Delaporte's argument is, it has been repeatedly, and we think rightly, rejected. *Gordon v. Degelmann*, 29 F.3d 295, 301 (7th Cir.1994); *United States v. Sutherland*, 929 F.2d 765, 769–71 (1st Cir.1991); *United States v. Wilson*, 36 F.3d 205, 208 (1st Cir.1994); *United States v. Mota*, 982 F.2d 1384, 1387 (9th Cir.1993). The federal government has an interest in preventing its officers from violating federal law, but it has no interest in preventing state officers from violating state law. If the warrant in this case had failed to comply with the requirements of federal law, Delaporte would have had a federal defense to the use of the evidence seized under the warrant in any court, state or federal. But that is not argued. The only violation (if there was one) was of state law. State officers do not by violating state law violate the federal Constitution. *Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir.1988) (en banc). So there is no constitutional basis for the defense asserted in this case, *Cleary v. Bolger*, 371 U.S. 392, 399, 83 S.Ct. 385, 389, 9 L.Ed.2d 390 (1963), nor any other basis that we can think of. At argument the defendant's lawyer suggested that the basis was comity; that the federal government should not invite violations of state law by providing a forum in which the violators can use the fruits of their violations. Given the considerable overlap between state and federal drug laws, the argument has a certain bite. State law enforcement officers who violate state law without at the same time violating federal law will often be able to turn over the fruits of their violations to federal law enforcement officers who will as it were do the state officer's prosecuting, only in federal court.

Comity between the federal government and the states has been a ground on which, for example, federal courts have declined to interfere with state criminal prosecutions. *Younger v. Harris,* 401 U.S. 37, 43–45, 91 S.Ct. 746, 750–51, 27 L.Ed.2d 669 (1971). It was the ground on which Justice Holmes thought that federal courts should refuse to admit wiretapping evidence seized in violation of state law. *Olmstead v. United States,* 277 U.S. 438, 469–71, 48 S.Ct. 564, 569, 72 L.Ed. 944 (1928) (dissenting opinion). If recognizing in the name of comity a federal defense to the use of evidence obtained in violation of state law were an indispensable method of assuring compliance with state law, it would deserve serious consideration, as the Ninth Circuit suggested in *United States v. Henderson,* 721 F.2d 662, 664–65 (9th Cir.1983). No such imperative has been shown. So far as appears, if Indiana wants to prevent even the rather technical violations of its telephone warrant statute that occurred here, it can punish its law enforcement officers who turn over evidence seized under unlawful warrants to the federal government. If it does not want to do this, that is no concern of ours. The refusal of the executive branch of state government to enforce a law enacted by the legislative branch is, in general, no business of a federal court. It is an aspect of the separation of powers within the states, a matter of state prerogative. *Markham v. Clark,* 978 F.2d 993, 995 (7th Cir.1992), and cases cited there. If the states implored us to recognize the defense proposed by the defendant in order to prevent the flouting of state law by state law enforcement officers, we might have a different case, though *United States v. Payner,* 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980), with its narrow construal of the federal courts' supervisory power over law enforcement, suggests not.

The *Sutherland* case, which we cited earlier, noted, while rejecting, earlier decisions which suggest that "in an extreme case of flagrant abuse of the law by state officials," evidence obtained by that abuse might be excludable in federal court. 929 F.2d at 770. We agree that an exception for cases of "flagrant abuse" is inappropriate, and are puzzled that in *United States v. Wilson, supra,* 36 F.3d at 208, the First Circuit should have (mis)read *Sutherland* as preserving the exception. The flagrant abuse, like the ordinary abuse, of state law is for the states to correct. We merely add that should a state ever ask us in the name of comity to exclude evidence obtained by state officers in violation of state law, we might revisit the issue; pending such a request, we agree with *Sutherland.*

■ Delaporte's second ground of appeal concerns the sentence. He was found with 411 marijuana plants in his possession, and under the applicable sentencing guideline each counted as one kilogram for purposes of computing his sentence. U.S.S.G. § 2D1.1(c). But of the 411 "plants," 195 were mere cuttings, although all had roots, at least incipient ones, described by the government's expert witness as comprising "visible white growth and fiber hairs growing from the edge of the clipping"—growing toward full-fledged roothood. Are cuttings so scantily accoutered "plants"? The guidelines do not define "plant." But all the circuits that have addressed the issue (our court is not one of them) define a plant as a cutting that has roots, *United States v. Burke,* 999 F.2d 596, 600–01 (1st Cir.1993); *United States v. Edge,* 989 F.2d 871 (6th Cir.1993); *United States v. Bechtol,* 939 F.2d 603 (8th Cir.1991); *United States v. Carlisle,* 907 F.2d 94, 96 (9th Cir.1990) (per curiam); *United States v. Eves,* 932 F.2d 856, 859–60 (10th Cir.1991), and these did. The defendant argues that cuttings are not plants unless they are "viable," and suggests that viability be determined by waiting to see whether the cuttings mature into plants that have leaves. The origin of the "root" test for a "plant" appears to be the practice of law enforcement authorities. Two of the circuits that have adopted that test have also explicitly rejected the test of "viability." *Id.* at 860; *United States v. Curtis,* 965 F.2d 610, 616 (8th Cir.1992).

Karl Marx, in "The Eighteenth Brumaire of Louis Napoleon," said that all world-historic facts and personages appear twice, the first time as tragedy, the second time as farce. Viability is, of course, a great issue in the debates over the legality of laws restricting abortion. See, e.g., Laurence H. Tribe,

*Abortion: The Clash of Absolutes* 113–39 (1990); Michael W. McConnell, "How Not to Promote Serious Deliberation about Abortion," 58 *U.Chi.L.Rev.* 1181, 1197–1200 (1991). There the issue is the age at which the fetus can live outside its mother's womb. Here we are asked to explore the issue in the setting not of a mother and her fetus but of a plant and its cutting.

The cuttings are the clipped-off tips of mature plants. The cutting or shoot is stuck into soil or a soil substitute. It "takes root," sending roots down into the soil to obtain nourishment. As the root structure develops, the above-ground plant grows and eventually sprouts leaves, at which point there is a full-fledged marijuana plant. At what point in the progress from the initial planting of the cutting to the attainment of maturity the cutting becomes a plant is as metaphysical as the question at what point between conception and birth a fetus becomes a person.

But of course the values, the considerations, that enter into decision are vastly different in the two cases. There is no cutting right to life or plant freedom of choice. The idea is to punish people who grow marijuana as well as those who distribute it, and to punish the larger growers more heavily than the smaller because the former pose a greater danger to the achievement of the goals of the drug laws. The proxy for scale is number of plants. If "plant" is defined too broadly, the relation between the dangerousness of the grower and the number of his plants frays. No doubt many cuttings fail to take root and as a result never produce marijuana. They are harmless. On the other hand it would be absurd to have a punishment scheme that gave the drug enforcement authorities an incentive lovingly to nurture to maturity any cuttings that they happened to seize, in order to maximize the grower's sentence. The compromise position that law enforcement authorities hit upon was to count a cutting as a plant if but only if it had sprouted roots (even if only rudimentary ones), indicating that it was on course to becoming a full-fledged marijuana plant. It strikes us a reasonable position. We adopt it.

 A paradox remains. Only female marijuana plants actually produce marijuana, just as only female cattle produce milk. If the rationale for counting "rooting" cuttings as plants is that they are sufficiently well on the way to maturity to pose a potential danger, then it might seem to follow that the male plants, posing no such danger, should not count in sentencing. But Congress can make it count if it wants to (the reason for its wanting to might be that the male plants are used for the sexual reproduction, as distinct from reproduction by cloning, of female plants, and thus contribute indirectly to the production of marijuana), and the only cases that have addressed the issue have held that it does want to. *United States v. Proyect,* 989 F.2d 84 (2d Cir.1993), and cases cited there. In any event we do not understand Delaporte to be raising an issue of gender.

The conviction and sentence are

AFFIRMED.