**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Geary S. STOWE, Defendant–Appellant.**

No. 95–3874.

United States Court of Appeals,
Seventh Circuit.

Argued May 21, 1996.

Decided Nov. 12, 1996.

Gregory M. Gilmore, Office of the U.S. Atty., argued, Springfield, IL, for U.S.

W. Michael Fuiten, Springfield IL, Eric M. Schwing, argued, Babette P. Salus, Schwing & Salus, Springfield, IL, for Geary Stowe.

Before CUMMINGS, MANION, and ROVNER, Circuit Judges.

MANION, Circuit Judge.

Geary Stowe pleaded guilty to possession with intent to distribute cocaine base, but he preserved the right to challenge on appeal the district court's denial of his motion to suppress. On appeal he claims that the Illinois "no-knock" statute is unconstitutional and that the search conducted under a no-knock warrant was unreasonable. He also challenges the voluntariness of his confession and the constitutionality of the sentencing penalty for crack cocaine. We affirm the district court.

### I.

Acting on information obtained from a confidential source, in the early morning hours of November 13, 1994, Officer James Graham of the Springfield, Illinois Police Department obtained from an Illinois Circuit Court judge a "no-knock" warrant to search an apartment in Springfield. According to Officer Graham's sworn affidavit, the police had received information from Crimestoppers on two previous occasions that a man and woman living in a Springfield apartment were selling drugs. The affidavit stated that a reliable, confidential source had visited the apartment the night before and had seen defendant with two loaded handguns and a large amount of crack cocaine. It also indicated that convicted felon Gary Stone, known as "Stef" (who is actually defendant Geary Stowe), lived at the apartment with his girlfriend and possessed the guns. The affidavit reported calls complaining of heavy traffic in and out of the apartment building and a landlord who knew of the drug transactions but did nothing because the tenant paid the rent on time.

Based on these allegations, and the assertion that the apartment had steel doors, the affidavit requested and the police received a no-knock warrant.

Later that same morning, at about 5:25 a.m., the emergency response team of the Springfield Police Department, weapons drawn and dressed in masks, hoods, and dark clothing, executed the search warrant. A single blow from the team's steel battering ram broke down the door. A "distraction device"—a type of grenade that creates a temporarily blinding flash of light and a loud explosion—was thrown into the apartment. More than ten police officers entered and quickly secured the apartment. They found 86.5 grams of crack cocaine on the kitchen table and a loaded handgun in a kitchen drawer. Stowe was arrested.

Also present were Tiffany Hatchett, who lives at the apartment, and Mark Lewis, Officer Graham's confidential source. Hatchett, clad only in lingerie, was asleep on the couch when the police broke in. According to Hatchett, the police "screamed get down, get down" and pulled her off the couch and handcuffed her. She claims that throughout the search the apartment door was left open and, still barely dressed, she was exposed to the view of police officers searching another apartment, casual passersby, and the officers' video camera. The government claims she was allowed to put on clothes after officers searched the bedroom. After the bathroom was searched, the officers said Hatchett could use the bathroom, but she declined because they would not remove her handcuffs. No federal agents were present.

Officer George Bonnett testified at the suppression hearing that prior to leaving the apartment at about 7:00 a.m., he informed Stowe of his *Miranda* rights, which Stowe waived in writing. Later that evening at the county jail, Officer Bonnett interviewed Stowe, who apparently confessed to trafficking in crack cocaine. Officer Bonnett testified that before the interview he again informed Stowe of his *Miranda* rights. Stowe denies this. Stowe was released from custody on November 14, 1994 at 6:00 p.m., approximately 36 hours after being arrested. He was never taken before a judge for a probable cause hearing.

Although local police conducted the raid, Stowe was later charged by federal prosecutors with possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1). He pleaded not guilty. Stowe moved to suppress the evidence seized during the search. He argued that the search was unreasonable under the United States and Illinois Constitutions, that the no-knock warrant was not based on probable cause, that the Illinois no-knock statute was unconstitutional, and that Stowe's post-arrest statements were not given voluntarily and were obtained in violation of the Fourth Amendment and the Illinois Constitution. The district court held that the "question of whether the search violated Illinois law and the question of whether or not the Illinois statute authorizing 'no-knock' searches is unconstitutional are irrelevant." Quoting from *United States v. Singer*, 943 F.2d 758 (7th Cir.1991), the district court concluded that "[t]he only relevant inquiry is whether or not 'the search contravened federal constitutional or statutory standards.'" *Id.* at 761. The district court ordered an evidentiary hearing to determine whether "exigent circumstances existed that justified executing the search in a no-knock fashion."

Following the hearing, the district court denied the motion to suppress. The court found that under the circumstances a no-knock entry was reasonable, the search was conducted in a reasonable manner, and Stowe's post-arrest statements were voluntary. Stowe then changed his plea to guilty but preserved his right to appeal the suppression issue. Before sentencing, he moved the court for a downward departure from the Sentencing Guidelines and to declare the sentencing "disparity" between crack and powder cocaine unconstitutional. The court rejected Stowe's arguments and sentenced him to 108 months imprisonment and five years supervised release, and assessed him $50. Stowe appeals the suppression ruling and his sentence.

## II.

### A. *The Illinois No–Knock Statute*

First, Stowe raises a facial challenge to the Illinois statute authorizing no-knock searches. He claims the statute violates the Fourth Amendment's protections against unreasonable searches and seizures by authorizing no-knock searches for patently unreasonable situations. Stowe filed with the district court a notice of his attack upon the constitutionality of the Illinois statute on the same day he moved to suppress the evidence gathered in this case. Both the suppression motion and its supporting brief prominently attack the statute as unconstitutional. The police sought the warrant in this case under the no-knock statute, and the judge issued it as such. Stowe's challenge to the no-knock statute is the centerpiece of his appeal.

■ The district court found the constitutionality of the statute irrelevant because federal rather than state law governed suppression of the evidence. That holding was not entirely correct. In *Illinois v. Krull*, 480 U.S. 340, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987), the Supreme Court held that the exclusionary rule will not be applied "to suppress evidence obtained by an officer acting in objectively reasonable reliance on a statute" that is later declared unconstitutional. *Id.* at 349, 107 S.Ct. at 1166. An exception arises where the "statute is clearly unconstitutional." *Id.* Thus, the evidence in this case will not be suppressed even if the Illinois statute is subsequently found unconstitutional, unless the statute is so "*clearly* unconstitutional" that the police could not in good faith have relied on it. Stowe's challenge to the statute therefore survives, but only in this limited manner rather than as a complete facial challenge.

The Illinois no-knock statute provides:

(b) Upon a finding by the judge issuing the warrant that any of the following exigent circumstances exist, the judge may order the person executing the warrant to make entry without first knocking and announcing his office:

(1) the presence of firearms or explosives in the buildings in an area where they are accessible to any occupant;

(2) the prior possession of firearms by an occupant of the building within a reasonable period of time;

(3) the presence of surveillance equipment, such as video cameras, or alarm systems, inside or outside of the building;

(4) the presence of steel doors, wood planking, crossbars, dogs, or other similar means of preventing or impeding entry into the building.

725 ILCS 5/108–8(b).

It has long been a part of our legal tradition that, where reasonable, an officer of the law should first announce his presence and authority before entering a home to search. In *Wilson v. Arkansas*, —— U.S. ——, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995), the Supreme Court traced the pedigree of the knock-and-announce doctrine to an English statute enacted in 1275 which may have codified what was already the common law. *Id.* at —— – ——, 115 S.Ct. at 1916–17. The Court explained that its earlier cases had "acknowledged that the common law principle of announcement is 'embedded in Anglo–American law.'" *Id.* at ——, 115 S.Ct. at 1918 (quoting *Miller v. United States,* 357 U.S. 301, 313, 78 S.Ct. 1190, 1197, 2 L.Ed.2d 1332 (1958)). "Woven ... into the fabric of early American law," *id.* at ——, 115 S.Ct. at 1917, the common-law knock-and-announce principle has thus become part of the expectations of privacy and security the Fourth Amendment sought to protect: "Given the longstanding common-law endorsement of the practice of announcement, we have little doubt that the Framers of the Fourth Amendment thought that the method of an officer's entry into a dwelling was among the factors to be considered in assessing the reasonableness of a search or seizure." *Id.* at ——, 115 S.Ct. at 1918. "This is not to say, of course, that every entry must be preceded by an announcement." *Id.* Rather, the presumption in favor of announcement must yield at times to the legitimate needs of law enforcement; the Fourth Amendment does not "mandate a rigid rule of announcement." *Id.* at —— – ——, 115 S.Ct. at 1918–19.

The Illinois statute labels as an "exigent circumstance" a variety of things that are part of the lives of millions of law-abiding citizens. But our cursory review of the statute is only to determine whether it was so "clearly unconstitutional" that the police could not in good faith have relied on it. *Krull,* 480 U.S. at 349, 107 S.Ct. at 1166. "Unless a statute is clearly unconstitutional, an officer cannot be expected to question the judgment of the legislature that passed the law." *Id.* at 349–50, 107 S.Ct. at 1166–67. Applying the approach used in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), as the Supreme Court did in *Krull,* we do not conclude the statute was so facially deficient that the authorities could not reasonably have presumed it to be constitutional. 468 U.S. at 923, 104 S.Ct. at 3420. The statute does *not* always grant police a no-knock search warrant whenever such factors are present. Significantly, to obtain a no-knock warrant, the police must still appear before a judge who must verify the statutorily defined "exigent circumstance" and who then *"may* order the person executing the warrant to make entry without first knocking and announcing his office." It is not automatic, nor even presumed. Thus, rather than granting carte blanche to kick down doors unannounced because someone owns (or recently possessed) a gun or has a house alarm or a dog, the statute leaves to the judge's discretion whether the facts of the situation warrant such an intrusive entry. Just as in other circumstances in which Illinois courts consider issuing a search warrant, they must balance the legitimate needs of law enforcement against the presumption that officers will announce themselves before entering a home. Because the statute is capable of a constitutional interpretation, it is not "clearly unconstitutional," and Stowe's challenge to it, as limited by *Krull,* fails.

## B. Suppression of Evidence

Stowe claims the no-knock search of the apartment violated the Fourth Amendment, not because the search warrant was not justified, but because there was insufficient probable cause to justify a no-knock warrant and that the officers' conduct in executing the warrant was unreasonable. Stowe submits there was no reason to believe he was dangerous, and that the search in this instance was outrageous, unauthorized, and

"disproportionate to the likely benefits from obtaining fuller compliance with the law." *United States v. Torres,* 751 F.2d 875, 883 (7th Cir.1984), *cert. denied sub nom. Rodriguez v. United States,* 470 U.S. 1087, 105 S.Ct. 1853, 85 L.Ed.2d 150 (1985). The district court found that exigent circumstances justified the no-knock search in this case. The district court also reviewed a videotape of the search and conducted an evidentiary hearing at which he considered the testimony of various individuals present at the search. The court found that the police conducted the search in a reasonable manner. Although we review findings of historical fact for clear error and give due weight to inferences, based on local conditions, drawn from those facts by resident judges and local law enforcement officers, we perform *de novo* review of the district court's determination of probable cause. *Ornelas v. United States,* —— U.S. ——, ——, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996).

█ Exigent circumstances exist when a defendant's awareness of a search would increase the danger to police officers or others, when drugs or firearms are regularly observed inside a defendant's residence, or when information leads police to reasonably conclude that the defendant is armed, dangerous, and possesses large amounts of cocaine. *United States v. Buckley,* 4 F.3d 552, 558 (7th Cir.1993), *cert. denied, sub nom. Herman v. United States,* 510 U.S. 1124, 114 S.Ct. 1084, 127 L.Ed.2d 400 (1994); *Singer,* 943 F.2d at 762. In this case, exigent circumstances made a no-knock search reasonable. As background, the officers knew Stowe had a prior criminal record, that he was using an alias, and that his apartment had a steel door. Further, the confidential source had personally observed the defendant at the apartment with a large amount of crack cocaine and loaded firearms. (The search later substantially confirmed these facts.) While the presence of a gun alone is not necessarily enough, drug dealing is a crime infused with violence. *See United States v. Boyd,* 55 F.3d 239, 241 (7th Cir. 1995). The police rightfully feared a possible gun fight. Guns *and* drugs together distinguish the millions of homes where guns are present from those housing potentially dangerous drug dealers—an important narrowing factor. Here we have the added factor of a known criminal in possession. We acknowledge the harshness of a no-knock search. Such a manner of police work is constitutionally disfavored in our history. *See Wilson,* —— U.S. at —— –——, 115 S.Ct. at 1916–17. But given what the officers knew about Stowe (a convicted felon operating under an alias), his apartment (protected by a steel door), what was present inside (a large amount of crack cocaine and at least one loaded handgun), and that this information was only a few hours old, law enforcement officers could conclude *a priori* the possibility of Stowe and Hatchett mounting an armed defense and/or destroying the crack cocaine.

Stowe also challenges the manner in which the Springfield authorities executed the warrant. "[I]t is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by the warrant—subject to the general Fourth Amendment protection 'against unreasonable searches and seizures.' " *Dalia v. United States,* 441 U.S. 238, 257, 99 S.Ct. 1682, 1693, 60 L.Ed.2d 177 (1979). Reasonableness is determined by the totality of the circumstances. *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983).

█ We agree with the district court that, at least with respect to Stowe, the search of the house itself was reasonable. Upon entering the apartment, the emergency response team that executed the no-knock warrant secured the area by yelling "Springfield Police, search warrant, everybody get down." Three minutes later, after the occupants of the apartment were handcuffed, the response team members exited and narcotics officers conducted the remainder of the search. Stowe has not alleged the use of excessive force, nor does he claim the police exceeded the temporal or geographic parameters of the warrant. Given the factual basis for the search, and the exigent circumstances present, we cannot say the police unreasonably searched the apartment.

**500**

■ This conclusion does not prevent us from criticizing the officers for their treatment of Ms. Hatchett. They refused her request to be allowed to cover herself at first, although later she was allowed to put on pants. She should have been given proper clothing as quickly as possible. Further, videotaping a scantily-clad woman, even only incident to the search, is grounds for a legitimate complaint. Dispositively, however, police actions during the search toward Stowe's girlfriend do not grant him standing to suppress evidence. *United States v. Salvucci,* 448 U.S. 83, 86–87, 100 S.Ct. 2547, 2550–51, 65 L.Ed.2d 619 (1980) (defendant has standing to challenge admission of evidence only if his own constitutional rights have been violated); *Rakas v. Illinois,* 439 U.S. 128, 134, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978) (same). Because the conduct of the Springfield authorities was not unreasonable with regard to Stowe, the evidence will not be suppressed for violation of the Fourth Amendment.

### C. Ninth Amendment

Stowe also contends that because in Illinois the exclusionary rule is a constitutional right (as opposed to a judicial remedy), the Ninth Amendment ensures that evidence gathered by state officials in violation of the Illinois right to be free from unreasonable searches and seizures must be suppressed in a *federal* prosecution. The district court rejected this argument citing *United States v. Delaporte,* 42 F.3d 1118 (7th Cir.1994), and *United States v. Singer,* 943 F.2d 758 (7th Cir.1991). Those cases, however, did not consider what if any impact the Ninth Amendment might have on this question.

Stowe has offered an interesting argument. The Ninth Amendment provides that "the enumeration in the Constitution of certain rights shall not be construed to deny or disparage others retained by the people." Commentators have concluded, based on historical evidence, that the Ninth Amendment preserves against encroachment by the federal government individual rights well embedded in state law until such rights are modified or abolished by state authorities or a judicial determination of unconstitutionality or in some way interfere with the proper scope of federal authority. *See* Russell L. Caplan, *The History and Meaning of the Ninth Amendment,* 69 Va. L.Rev. 223, 227 (1983).

Stowe does not provide us with the opportunity to address such a challenge, however. A necessary predicate to Stowe's argument that the Illinois exclusionary rule should apply in this federal prosecution is a winning argument that the police violated his right under the Illinois Constitution to be free from unreasonable searches and seizures. Stowe has not provided us with that argument. Illinois law interpreting the right against unreasonable searches and seizures tracks closely the Supreme Court's Fourth Amendment jurisprudence. *See People v. Tisler,* 103 Ill.2d 226, 82 Ill.Dec. 613, 622, 469 N.E.2d 147, 156 (1984); *People v. Williams,* 275 Ill.App.3d 249, 211 Ill.Dec. 688, 693, 655 N.E.2d 1071, 1076 (1995); *People v. Beasley,* 206 Ill.App.3d 112, 151 Ill.Dec. 7, 12, 563 N.E.2d 1113, 1118 (1990). We have held that Stowe's Fourth Amendment rights were not violated. Nothing Stowe has suggested indicates that an analysis under the Illinois Constitution would produce a different result. Thus, whether the Illinois exclusionary rule would apply is irrelevant.[1]

### D. Suppression of Statement

Stowe asserts that the statement taken from him at the county jail the night of the search should not be used against him because it violates the prompt presentment rule of *Gerstein v. Pugh,* 420 U.S. 103, 114, 95 S.Ct. 854, 863, 43 L.Ed.2d 54 (1975). The statement at issue was taken 18 hours after Stowe's arrest; he was released 36 hours after the arrest, never having been presented to a judicial official for a probable cause hearing. The district court denied Stowe's motion to suppress the statement, finding that Stowe "was not originally arrested pursuant to federal charges and that there was

---

1. We note that *People v. McGee,* 268 Ill.App.3d 32, 205 Ill.Dec. 883, 890–91, 644 N.E.2d 439, 446–47 (1994), casts doubt on Stowe's argument that the exclusionary rule in Illinois is a well-established constitutional right instead of a judicial remedy to secure a right.

not improper collaboration between state and federal law enforcement authorities."

▮▮▮ That a probable cause hearing must occur soon after a suspect is taken into custody cannot be overemphasized. In *County of Riverside v. McLaughlin*, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991), the Supreme Court held that jurisdictions providing a probable cause determination within 48 hours of arrest are immune from systemic challenges. *Id.* at 56, 111 S.Ct. at 1669. Here, Stowe was detained for 36 hours, and there has been no allegation of beating or any coercion. Accordingly, no constitutional deprivation occurred. Under 18 U.S.C. § 3501(c), a confession must be suppressed unless a delay before a defendant is brought before a magistrate is found to be reasonable. This statute does not apply in this case, however, because, as the district court concluded, Stowe was not originally arrested on federal charges; he was arrested initially by state authorities on state charges, detained for 36 hours based on those state charges, and only later were federal charges filed. Moreover, no evidence exists whatsoever of an "improper collaboration between federal and state or local officers." *See United States v. Alvarez–Sanchez*, 511 U.S. 350, 359, 114 S.Ct. 1599, 1604, 128 L.Ed.2d 319 (1994).

### E. Sentencing Challenges

▮▮▮ The remainder of Stowe's arguments, which challenge his sentence, do not warrant much discussion. First, he contends that Congress exceeded its authority under the Commerce Clause when it created the penalty for crack cocaine possession. To Stowe, Congress' power does not extend to imposing his sentence. This argument fails, of course, because sentencing for a crime does not require a commerce nexus. Unlike a gun possessed near a school (*United States v. Lopez*, —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995)), or the burning of a home (*United States v. Pappadopoulos*, 64 F.3d 522, 525 (9th Cir.1995) (commerce clause does not give power to criminalize simple arson)), local distribution of cocaine-based drugs, such as the crack in this case, are part of a long and continuous chain of international and interstate commerce. Although crack may be manufactured locally, the relevant question is whether this type of activity bears a "substantial relation" to interstate commerce. *Lopez*, —— U.S. at ——— ———, 115 S.Ct. at 1629–30. Local participation in the international and interstate drug trade bears such a relation. Regardless, Stowe challenges his *sentence*, not the underlying crime. We rejected Stowe's other argument that the sentencing disparity between crack and powder cocaine violates the equal protection and due process clauses in *United States v. Booker*, 73 F.3d 706, 710 (7th Cir.1996).

Because the district court correctly denied Stowe's suppression motion and properly sentenced him, its rulings are AFFIRMED.

ILANA DIAMOND ROVNER, Circuit Judge, concurring in the judgment.

Although I regard the issue as close, I agree with the majority that the unannounced entry into Stowe's apartment was justified by exigent circumstances, and that the district court's denial of Stowe's suppression motion must therefore be upheld. Having concluded that there was no violation of Stowe's Fourth Amendment rights in this case, I consider the majority's decision to embark upon a discussion of the constitutionality of the Illinois "no-knock" statute, 725 ILCS 5/1088, to be particularly ill-advised. Indeed, our conclusion that there was no Fourth Amendment violation here ensures that any determination we may make about the no-knock statute is of no practical consequence to Stowe because our views concerning whether the statute is unconstitutional, "clearly" or otherwise, will have no effect whatsoever on the disposition of Stowe's suppression motion. As a threshold matter, then, it is not immediately evident to me that Stowe would have standing to mount a facial attack against the no-knock statute. *Cf. County Court of Ulster County v. Allen,* 442 U.S. 140, 155, 99 S.Ct. 2213, 2223, 60 L.Ed.2d 777 (1979) ("As a general rule, if there is no constitutional defect in the application of a statute to a litigant, he does not have standing to argue that it would be unconstitutional

if applied to third parties in hypothetical situations.")

Moreover, even if we were to conclude that Stowe has standing to challenge the statute, there are other sound reasons to refrain from ruling on its constitutionality here. In *Krull*, the Supreme Court held that the exclusionary rule has no application where evidence is obtained pursuant to a statute that, although held to be unconstitutional, does not so clearly transgress the Fourth Amendment that a reasonable officer, acting in objective "good faith," would have been expected to recognize its invalidity. *Krull*, 480 U.S. at 349–51, 355, 107 S.Ct. at 1166–68, 1170. Thus, where a search would be illegal but for the fact that it was authorized by a statute upon which the officer could reasonably rely, the motion to suppress must be denied. Id. at 355, 359–60, 107 S.Ct. at 1170, 1172; *see also United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). It follows that the question whether a statute is "clearly unconstitutional" within the meaning of *Krull* would have to be addressed only in a case where a defendant's Fourth Amendment rights were violated, and becomes superfluous in a case where they were not. Yet the majority embarks upon an analysis of the statute and concludes that it is not "clearly unconstitutional" under *Krull* without so much as acknowledging that constitutional questions should generally be avoided unless necessary to the resolution of the case. *E.g., Kolender v. Lawson*, 461 U.S. 352, 361 n. 10, 103 S.Ct. 1855, 1860 n. 10, 75 L.Ed.2d 903 (1983); *see also Brennan v. Township of Northville*, 78 F.3d 1152, 1157 (6th Cir.1996); *United States v. Knox*, 888 F.2d 585, 587 (8th Cir.1989); *United States v. Velasquez*, 885 F.2d 1076, 1083 (3d Cir.1989), *cert. denied*, 494 U.S. 1017, 110 S.Ct. 1321, 108 L.Ed.2d 497 (1990).

Following oral argument, we were apprised that the question of the constitutionality of 725 ILCS 5/108–8 is currently pending before the Illinois Supreme Court (*People v. Krueger*, No. 80486 (Ill. argued Sept. 18, 1996)). Although the Illinois Supreme

Court's view of the Fourth Amendment is not binding upon us, its interpretation of the meaning of the statute is authoritative (*e.g., Diesel Service Co. v. AMBAC Internat'l Corp.*, 961 F.2d 635, 639 & n. 3 (7th Cir. 1992); *Williams, McCarthy, Kinley, Rudy & Picha v. Northwestern Nat'l Ins. Group*, 750 F.2d 619, 624 (7th Cir.1984)), and may well alter the constitutional inquiry. As a prudential matter, then, I consider it unwise to venture an opinion concerning the facial validity of the statute when that determination is wholly unnecessary to deciding this appeal. For these reasons, I concur in the majority's judgment but do not join its opinion.