# United States Court of Appeals
## For the First Circuit
———————————————

No. 99-2120

UNITED STATES OF AMERICA,

Appellee,

v.

JOHN D. BROWN,

Defendant, Appellant.

———————————————

Before

Boudin, <u>Chief Judge</u>,
Torruella and Selya, <u>Circuit Judges</u>,
Stahl, <u>Senior Circuit Judge</u>,
Lynch and Lipez, <u>Circuit Judges</u>.

———————————————

ORDER OF COURT

Entered:  January 4, 2002

The en banc court being equally divided, the judgment of the district court is <u>affirmed</u>.  Separate statements of Judges Stahl, Torruella and Lipez are attached.

By the Court:

Richard Cushing Donovan, Clerk

By: Julie Gregg, Appeals Attorney

**STAHL, <u>Senior Circuit Judge</u>**.  I write because the affirmance of the district court's decision by this equally divided en banc court marks the first time that a court of appeals has let stand a district court ruling that the presence of a large quantity of drugs and a weapon seen at some earlier but unspecified time *standing alone* satisfies the "reasonable suspicion" standard set out by the Supreme Court in <u>Richards</u> v. <u>Wisconsin</u>, 520 U.S. 385, 394 (1997), regarding when the police may dispense with their obligation to "knock and announce" before executing a warrant.

In the affidavit supporting their March 17, 1998 warrant application, the police informed the magistrate judge that earlier that month, a reliable confidential informant told them that he had been in the defendant's home (at some indeterminate time in the past) and had observed "large amounts of cocaine as well as at least one firearm."  Later, the affidavit stated that "sometime during the past five days," the informant had been in the apartment and "had observed a large amount of cocaine within the residence."  Apparently, the informant made no mention of a weapon and seemingly the police did not inquire whether any weapons were present in the apartment on that occasion.  The affidavit also mentioned a

-2-

prior drug arrest of the defendant in Connecticut, although the date and circumstances of the arrest were not included. The police affidavit indicated that a no-knock warrant was being sought; however, the original complaint did not specifically include any "no-knock" language. The magistrate judge directed the officer to make a hand-written notation clarifying that the police were applying for a no-knock warrant. Despite these changes to the complaint, however, nowhere on the face of the warrant does it indicate that the magistrate judge granted the no-knock request. The police have acknowledged that there was no change in circumstances between the time that they obtained the warrant and the date of its execution. Nonetheless, the police maintain that, based on these facts, they were entitled to make a no-knock entry even without the magistrate's approval.

In Richards, the Supreme Court made clear that the determination of whether there is a "reasonable suspicion" of the existence of "exigent circumstances," such as the destruction of evidence or dangerousness to the police, in order to justify a no-knock entry must be based on an examination of the "particular circumstances" of the case. 520 U.S. at 394. The pronouncement of any per se rule would be antithetical to the Supreme Court's instruction that lower courts conduct a fact-specific inquiry. However, based on the information that

was presented to the lower court in <u>this</u> case, which all parties concede was "scant," the district court simply could not have determined that there was reasonable suspicion that <u>this</u> defendant presented a risk of danger to the police without deciding that drugs plus a gun amounts to per se "reasonable suspicion." No other circuit has announced such a blanket rule, and in the cases where reasonable suspicion was found, those courts were presented with specific information regarding that individual defendant's violent criminal history, belligerent disposition, or other factors indicating the likelihood that the defendant would pose a threat to the safety of the police.[1] The

---

[1] <u>See</u> <u>United States</u> v. <u>Geraldo</u>, No. 00-3115, 2001 WL 1488587, at *5 (D.C. Cir. Nov. 27, 2001) (noting that the apartment where arrest was to be executed had been robbed months earlier, and that one of the residents "had been seen wearing a revolver, allegedly to protect the residence from additional robberies . . . and therefore might be quick to use it"); <u>United States</u> v. <u>Cantu</u>, 230 F.3d 148, 153 (5th Cir. 2000) (finding no-knock entry unreasonable where police had no prior knowledge that defendant or any other occupants of his residence "were armed or posed immediate danger" and noting that the Supreme Court had "rejected blanket rules allowing 'no-knock' entries based on overgeneralizations about today's drug culture or other 'general categories of criminal behavior'") (quoting <u>Richards</u>, 520 U.S. at 394); <u>United States</u> v. <u>Tavares</u>, 223 F.3d 911, 917 (8th Cir. 2000) (rejecting officer safety rationale for no-knock entry where there was no information that the defendant "was known to use weapons, that he was armed or carried a weapon, or that he had a history of violence toward law enforcement officers"); <u>United States</u> v. <u>Reilly</u>, 224 F.3d 986, 991 (9th Cir. 2000) (approving no-knock entry where defendant was sought in another jurisdiction for numerous violent offenses and where co-defendant's outburst upon being apprehended could have notified defendant of police presence and given him the opportunity to

decision rendered by the district court in this case also

arm himself); <u>United States</u> v. <u>Gambrell</u>, 178 F.3d 927, 929 (7th Cir. 1999) (determining that no-knock entry was justified where there was specific evidence that there were guns "strapped to and instantly accessible by the people inside" the apartment); <u>United States</u> v. <u>Cooper</u>, 168 F.3d 336, 338 (8th Cir. 1999) (ratifying no-knock entry of house that was barricaded and where the defendant had a violent criminal history); <u>United States</u> v. <u>Mattson</u>, 153 F.3d 406, 411 (7th Cir. 1998) (approving no-knock entry where police had information that the defendant "had stated he was in possession of a weapon and threatened to kill anyone who interfered with his drug sales," and that some of the residents of the house were "armed and had a history of violence"); <u>United States</u> v. <u>Bates</u>, 84 F.3d 790, 796 (6th Cir. 1996) (refusing to ratify no-knock entry where, despite information that a gun was in the apartment, there was no indication that "the Defendants were violent and likely to use a weapon if confronted by law enforcement officers" and in the absence of any evidence that the Defendants "had a criminal history of violence or a reputation indicating they were likely to be violent"); <u>United States</u> v. <u>Stowe</u>, 100 F.3d 494, 499 (7th Cir. 1996) (finding no-knock entry justified in light of evidence that the defendant was a convicted felon operating under an alias, that his apartment was protected by a steel door, that a large amount of crack cocaine and at least one loaded handgun was in the apartment and that the foregoing information had been received by the police only a few hours before executing the warrant); <u>United States</u> v. <u>Brown</u>, 52 F.3d 415, 421 (2d Cir. 1995) (finding reasonable suspicion where defendant had been charged with a crime of a serious and violent nature and had previously attempted to collect a drug-related debt with a pump-action shotgun); <u>United States</u> v. <u>Kennedy</u>, 32 F.3d 876, 883 (4th Cir. 1994) (noting that the officers had "particular reasons" to be concerned for their safety, including the fact that one of the defendants, during a previous automobile stop, had told the officer that "if he was arrested for 'something big' in the future, it would be for 'killing a cop'"); <u>United States</u> v. <u>Lalor</u>, 996 F.2d 1578, 1584-85 (4th Cir. 1993) (finding no-knock entry was permissible on the basis of officer safety concerns where police had found a weapon on defendant at the time of his arrest on an unrelated charge five days earlier and in light of the fact that the defendant had been "belligerent" and had made "derogatory remarks about the police" during an encounter with officers earlier that same month).

deviates from well-established First Circuit precedent requiring that no-knock entries be supported by the particular circumstance of a specific case.[2]

All of the judges who originally heard this case agree that the panel's decision should have been reinstated, and that this matter should have been remanded to the district court for the development of a more adequate factual record. The significance of this decision letting the ruling of the district court stand cannot be ignored, and its capacity to undermine the protections of the Fourth Amendment should not be underestimated.

---

[2]See, e.g., United States v. Hawkins, 139 F.3d 29, 32 (1st Cir. 1998) (noting defendant's "copious record of violent convictions, coupled with the attesting police officer's personal knowledge of a recent armed action by him"); United States v. Jewell, 60 F.3d 20, 24 (1st Cir. 1995) (finding no-knock entry justified where defendant kept a pit bull dog in the apartment, and had an "extensive history of arrest and conviction for violent crimes").

**TORRUELLA, <u>Circuit Judge</u>.** I write separately to explain my vote to reverse the district court's ruling, and to voice my criticism of the existing "knock and announce" jurisprudence.

We are required to review the factual record of this case in light of the Supreme Court's decision in <u>Richards</u> v. <u>Wisconsin</u>, 520 U.S. 385 (1997), and our own circuit caselaw on this issue. Both Supreme Court and First Circuit precedent clearly requires something more compelling than the existence of drugs and a weapon to satisfy the "reasonable suspicion" standard before the police can dispense with the obligation to "knock and announce" when executing a warrant. <u>See</u> <u>supra</u> (Stahl, J.). My vote, then, is dictated by the clearly established precedent to which I am bound.

Nevertheless, I write to express my criticism for the precedent I uphold. Everyday experience demonstrates that the presence of weapons and drugs for sale in the same locale creates a high probability that violence will ensue. Given this heightened danger, it is unreasonable for courts to expose law enforcement officials to an even greater risk of harm by requiring them to announce their presence to their would-be attackers.

It is thus entirely <u>reasonable</u> to presume a high risk of violence in a situation such as this and <u>unreasonable</u> to endanger the police even further by requiring them to "knock and announce."

Because the ultimate standard under the Fourth Amendment is reasonableness, <u>see</u> <u>Camara</u> v. <u>Mun. Court of San Francisco</u>, 387 U.S. 523, 539 (1967), I would endorse a <u>per</u> <u>se</u> rule supporting no-knock police entries in circumstances where the police -- acting on reliable information -- reasonably believe that weapons and drugs are present at the place to be searched.[3]

The state of the law being otherwise, however, I am compelled to vote to reverse the district court's ruling on the grounds that the "reasonable suspicion" standard has not been satisfied.

---

[3]This position assumes, of course, that all other Fourth Amendment requirements have been satisfied.

**LIPEZ, <u>Circuit Judge</u>**.  As a member of the panel that originally heard this case, I write separately to explain why I still cannot vote to affirm the decision of the trial court and why I believe that the panel correctly remanded this case to the trial court for further consideration.  In my view, the trial court made two errors:  (1) its finding that the evidence before the magistrate judge supported a reasonable suspicion of dangerousness to the police, justifying a no-knock entry; and (2) its failure to resolve the important factual question of whether or not the magistrate judge had authorized a no-knock warrant.

### Reasonable Suspicion of Dangerousness

I accept the proposition that the presence of drugs and a gun in an apartment where drug dealing is suspected justifies the reasonable suspicion, without more, that a "knock and announce" entry would endanger the police.  In my view, to obtain authorization for a no-knock entry, the police need not show that the defendant presented a risk of danger to the police because of facts peculiar to that defendant, such as a violent criminal history, recent threats or other history that would strengthen the suspicion of the defendant's propensity to use the gun.  Any such requirement would ignore the reality that the presence of a gun at a site where drugs are sold signals the

-9-

possibility of danger and would expose police officers to unreasonable risks.  Indeed, I believe that the Supreme Court, applying <u>Richards</u> v. <u>Wisconsin</u>, 520 U.S. 385 (1997), would agree.

However, these unreasonable risks support a no-knock entry when there is a reasonable suspicion of the presence of a gun at the time of the entry.  In this case, the evidence of the presence of a gun was so stale and so scant that it did not justify a reasonable suspicion that a gun would be present when the officers entered the apartment.  <u>United States</u> v. <u>Schaefer</u>, 87 F.3d 562, 568 (1st Cir. 1996) (acknowledging that "an affidavit supporting a search warrant must contain timely information or else it will fail"); <u>United States</u> v. <u>Dauphinee</u>, 538 F.2d 1, 5 (1st Cir. 1976) ("It is well established that the temporal proximity or remoteness of the events observed has a bearing on the validity of a warrant."); <u>Rosencranz</u> v. <u>United States</u>, 356 F.2d 310, 315-16 n.3 (1st Cir. 1966)(same).

According to the affidavit supporting the warrant application, the police's confidential source indicated that he had been in the apartment in question and had observed "large amounts of cocaine as well as at least one firearm."  There is no evidence as to when this sighting occurred.  In addition, the affidavit revealed that on another occasion the informant had

-10-

seen a large amount of cocaine in defendant's apartment five days prior to the warrant application; however, nothing in the affidavit indicated the presence of a firearm in the apartment on that occasion. Without suggesting that five days is the controlling standard of recentness, if the affidavit in this case had disclosed reliable information as to the presence of both the gun and drugs within five days of the request for a warrant, that evidence would have been sufficient to meet the reasonable suspicion standard. That, however, is not the record before us. For that reason, I disagree with the outcome reached by the trial court.

### Approval or Disapproval of a No-Knock Warrant

In addition, the government argued to the panel that they should have an opportunity upon remand to invoke the Leon good faith exception in the event of a finding that the magistrate judge had wrongly granted a no knock warrant upon which they reasonably relied. See United States v. Leon, 468 U.S. 897, 922 (1984) (holding that "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant" need not be suppressed). The panel agreed that the government should have that opportunity, believing that it should not be disadvantaged because the trial court failed to address that important issue. Of course, the trial court could

-11-

find that the magistrate judge refused to authorize a no-knock entry.  If so, the officers would not have been justified in disregarding that decision of the magistrate judge in carrying out a no-knock entry.  As Judge Stahl has noted, the police acknowledge that there was no change in circumstances between the time the magistrate judge issued the warrant and the date of its execution that would have justified disregarding a denial of their request for a no-knock warrant.  Cf. Richards, 520 U.S. at 395-96 n.7 (holding that magistrate's decision not to authorize a no-knock entry did not preclude no-knock entry where circumstances that confronted officers at the time of entry justified their ultimate decision to enter unannounced). See United States v. Sargent, 150 F.Supp.2d 157, 161 (D.Me. 2001) (recognizing that courts tend to excuse police's failure to properly announce their presence (notwithstanding denial of no-knock warrant) where "new critical events" transpired between time that warrant issued and time that police enter premises). The record as it stands leaves open the possibility that the police acted contrary to a judicial order through the no-knock entry.  That troubling prospect also precludes me from affirming the district court's decision and supports the wisdom of a remand.