THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
VINCENT BRUMLEY, Defendant-Appellant.

First District (4th Division)   No. 1—90—2326

Opinion filed April 16, 1992.—Rehearing denied May 15, 1992.

Rita A. Fry, Public Defender, of Chicago (Cheryl K. Lipton and Karen E. Tietz, Assistant Public Defenders, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Marie Quinlivan Czech, and Jeanne Lobelson, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

Defendant Vincent Brumley and two codefendants, Steven Anderson and Lorne Gray, were charged in a 22-count indictment and separate trials were conducted. Following a jury trial in the circuit court of Cook County, defendant was found guilty of murder, armed robbery, and aggravated kidnapping (Ill. Rev. Stat. 1989, ch. 38, pars. 9—1, 18—2, 10—2). He was sentenced to concurrent terms of imprisonment of 55 years for murder, 30 years for armed robbery, and 15 years for aggravated kidnapping. On appeal, defendant contends that (1) the trial court erred in considering evidence outside the record at the suppression hearing and at the sentencing hearing; (2) the State made several improper statements during closing argument which denied him a fair trial; and (3) the trial court erred in refusing to give his proposed jury instruction on accountability.

We affirm.

At trial, Derrick Hendrix testified that on June 13, 1986, he was driving home from work when he saw two men holding a gun on another man near the intersection of Roosevelt Road and 13th Street. He told a police officer about what he had seen and the two returned to the scene. No one remained at the scene nor were there any witnesses in the area. The officer later learned that a white car was seen speeding away from the parking lot.

Stephanie Morgan, a clerk at the Kedzie-Ogden Currency Exchange, testified that on June 13, 1986, she received a telephone call regarding the type of identification needed to cash a check. Approximately 30 minutes later, the witness stated that a customer, whom she identified as Allen Cypin (the victim), came into the exchange. She recognized the victim's voice as that of the same person who had called earlier about identification. The witness also stated that the victim was wearing a jacket, in spite of the heat. She further testified that the victim appeared to be frightened and nervous and was sweat-

ing. The witness further testified that while she was processing the check she noticed that a man was insistent upon standing closely behind the victim and that on three separate occasions she had to ask the man to step back. She stated that the man did not transact any business and that both men left the currency exchange at the same time.

Detective James Mercurio testified that he found the victim's body and that it had a gunshot wound to the head. The victim's white car was recovered approximately one mile from where the body was found.

Willie McCoy testified that he knew Gray, Anderson and defendant. He stated that he saw Gray in a white car in the parking lot near his apartment. He further stated that the police had asked him about the car because its owner had been murdered. The witness testified that he did not speak to the police because he was afraid.

McCoy further testified that he did not see Gray again until about 16 months after the police first asked him about the white car. He stated that after seeing Gray again and completing a drug abuse program, he decided to inform the police about what he had seen. The witness identified Gray's photo and pointed out Gray's house. The witness agreed to testify provided the State relocate him.

Detective Terrance Thedford testified that after speaking with Willie McCoy on October 14, 1987, he interviewed Gray. He further stated that, as a result of his conversation with Gray, he and his partner attempted to locate Steven Anderson and defendant. The witness stated that he interviewed Anderson and went to defendant's home, where he interviewed defendant's mother. After returning to defendant's home a second time, defendant voluntarily accompanied the officer to the police station. Defendant and Anderson were placed under arrest. Defendant denied being involved in the homicide, even after being confronted with incriminating statements made by Gray. Several hours after being taken into custody, defendant made a court-reported statement.

Defendant stated that Anderson and Gray pulled up beside him in a white car in June of 1986. They asked him to get in the car and he got into the back seat. Defendant stated that there was a "man balled up" on the floor in the rear of the car. He stated that they drove around for awhile and then went to a currency exchange. Defendant stated that Anderson, Gray and the victim went into the currency exchange while he stayed in the car. Defendant stated that when they returned, Anderson gave Gray some money. He further stated that he did not receive any money. Anderson then drove the car to a lot near

some railroad tracks. He saw Anderson with the gun standing over the victim and heard a gunshot. Defendant stated that he ran when he heard the shot.

Assistant State's Attorney Inge Fryklund testified that she interviewed defendant for approximately 20 minutes on October 23, 1987. The witness stated that near the end of the interview she asked defendant if he was surprised to be arrested 18 months after the event. The witness stated that he said, "Yes, I thought we got away with it."

The jury found defendant guilty of murder, aggravated kidnapping and armed robbery. At the sentencing hearing, the State asked the court to consider hearsay statements of Gray and Anderson which indicated that defendant shared in the proceeds of the cashed payroll check and that defendant had been active in controlling the victim while in the back seat of the car. The court found the acts in this case to be exceptionally cruel and sentenced defendant to concurrent terms of imprisonment of 55 years for murder, 30 years for armed robbery and 15 years for aggravated kidnapping. This appeal followed.

Initially, we note the State contends that defendant has waived objection to every issue on appeal because he failed to object at trial or raise them in his motion for a new trial. Generally, an issue which has not been objected to during trial and raised in a post-trial motion is not preserved for appeal unless the issue is plain error. (*People v. Enoch* (1988), 122 Ill. 2d 176, 187.) "The [plain error] doctrine will be applied in criminal cases if the evidence was closely balanced or the alleged error was so serious that it deprived defendant of a fair trial." (*People v. Priola* (1990), 203 Ill. App. 3d 401, 417.) We will review the alleged errors to ascertain whether they so seriously prejudiced defendant as to deprive him of a fair trial.

Defendant first argues that he should be given a new hearing on his motion to quash arrest and suppress evidence because the trial court relied on evidence outside the record in finding probable cause to make the arrest. Defendant argues that since the substance of Gray's statement was not introduced into evidence at the hearing, it was reversible error for the trial judge to rely on the statement. The State argues that the trial judge did not rely on the content of the statement but on the fact that Gray made a statement which implicated himself as well as defendant.

"There is a presumption that a trial court relied only on proper evidence in reaching its conclusion" (*People v. Brock* (1989), 184 Ill. App. 3d 595, 599) and disregarded evidence which is inadmissible in forming conclusions (*People v. Harris* (1974), 57 Ill. 2d 228, 231). Fur-

ther, "[a] reviewing court will not disturb a trial court's finding on a motion to suppress unless that finding is manifestly erroneous." *People v. Thompson* (1991), 215 Ill. App. 3d 514, 519.

■ In the present case, the court based its finding of probable cause on facts in the record that Gray made an inculpatory statement, implicating both himself and defendant in the crime. The trial judge specifically stated that the contents of the statement were not admitted into evidence because they were not relevant. Defendant's speculation that the trial court relied on evidence outside the record, without more, is insufficient to overcome a presumption that the trial court considered only proper evidence in reaching its decision.

In finding probable cause, the court's determination may be based on both factual and practical considerations of everyday life. (*People v. Thompson* (1991), 215 Ill. App. 3d 514, 519.) The record amply supports a finding that Gray made a statement implicating defendant in the crime. We believe the circumstances under which the statement was made are a factor which the trial court could properly take into consideration in finding probable cause. We therefore find that the trial court did not rely on evidence outside the record in finding probable cause to arrest defendant.

Defendant contends that it was error for the trial judge, at the sentencing hearing, to consider hearsay issues and statements by Gray and Anderson that defendant shared in the proceeds of the armed robbery. In *People v. Tigner* (1990), 194 Ill. App. 3d 600, the court stated as follows:

> "It has long been held that a sentencing judge will be given wide latitude in his discretionary determination of the types and sources of evidence that may be admitted to assist him in determining the kind and extent of punishment to be imposed within the statutory limits. [Citations.] The only requirement for admission is that the evidence be reliable and relevant, and this is a decision left to the discretion of the sentencing court. [Citation.] *** The relaxation of the formal rules of evidence at the sentencing stage is intended to provide the sentencing judge with a wide range of information concerning the defendant's life, character, criminal history and a propensity to continue to commit other offenses. [Citations.] Even hearsay evidence is not *per se* inadmissible at a sentencing hearing. [Citations.] A hearsay objection will go to the weight and not the admissibility." *Tigner*, 194 Ill. App. 3d at 607.

■ We do not believe the trial court committed error in considering hearsay evidence and statements by Gray and Anderson that

defendant shared in the proceeds of the robbery. The court found the statements to be reliable and relevant to the sentencing of defendant. As we previously discussed, in determining the reliability of the statement, the court considered the fact that Gray implicated himself when he made the statement. In addition, the fact of whether defendant shared in the proceeds of the robbery is relevant to his culpability. We therefore find that the judge did not abuse his discretion in admitting evidence at the sentencing hearing.

■ Thirdly, defendant contends that he was denied a fair trial by the prosecutor's uninvited, improper statements during closing arguments. The State argues that the statements were proper comments on the evidence and were invited by defense counsel's argument. We agree with the State. In *People v. Tipton* (1990), 207 Ill. App. 3d 688, the court set forth the standard of review as follows:

> "It is settled that a prosecutor is given great latitude in making closing arguments, and the trial court's determination of the propriety of the argument will stand absent a clear abuse of discretion. [Citations.] The prosecuting attorney may not make arguments or assumptions which have no basis upon the evidence. [Citations.] *** Generally, improper comments or remarks made by a prosecutor do not constitute reversible error unless they are a material factor in the conviction [citation], or result in substantial prejudice to the accused [citations]." (*Tipton*, 207 Ill. App. 3d at 699-700.)

In addition, our supreme court has held that it is proper for a prosecutor to draw inferences from facts in evidence. *People v. Franklin* (1990), 135 Ill. 2d 78, 100.

■ Defendant contends that it was error for the prosecutor to comment on what the victim was experiencing when he was forced out of the car by the three men who had abducted him. Although defendant was not involved in the abduction, the evidence establishes that he was one of the three people present when the victim was taken to a parking lot where he was murdered. We find that the prosecutor's statements were reasonable inferences drawn from the record and invited by defense counsel's argument. We also find that the other alleged errors in closing argument are immaterial and are therefore waived. See *People v. Enoch* (1988), 122 Ill. 2d 176, 187.

■ Lastly, defendant contends that it was reversible error to refuse to modify the jury instruction on accountability with the following language: "[M]ere presence of the defendant at the scene and even knowledge that an offense being committed does not establish

responsibility for the acts of others." The trial judge instructed the jury as follows:

"A person is legally responsible for the conduct of another person when, either before or during the commission of an offense, and with the intent to promote or facilitate the commission of that offense, he knowingly solicits, aids, abets, agrees to aid, or attempts to aid another person in the planning or commission of the offense." See Illinois Pattern Jury Instructions, Criminal, No. 5.03 (2d ed. 1981).

"Illinois courts have consistently held that IPI Criminal No. 5.03 properly advises the jury on the law [regarding] accountability." (*People v. Underwood* (1982), 108 Ill. App. 3d 846, 853.) We believe the trial court's instruction contained a clear explanation of the law of accountability. Defendant could not have been found guilty of an offense under an accountability theory unless he had the intent to promote or facilitate the commission of the offense. We therefore find that the trial court did not err in refusing to give defendant's proposed jury instruction on accountability.

For the foregoing reasons, we affirm the ruling of the circuit court.

Affirmed.

JIGANTI, P.J., and LINN, J., concur.