THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PAUL WILLIAMS, Defendant-Appellant.

First District (4th Division)    No. 1—93—0164

Opinion filed September 7, 1995.

James K. Leven, of Northfield, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, William D. Carroll, and William L. Toffenetti, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAHILL delivered the opinion of the court:

A jury found Paul Williams guilty of armed robbery and the murder of Mark Davies. The trial court sentenced defendant to 39 years in prison. He appeals and argues that numerous errors denied him a fair trial. We affirm.

Mark Davies was beaten, robbed, and left to die in the Jackson Park lagoon on June 27, 1987. The next day Samuel Lane was also beaten and robbed near the lagoon. Twelve days later the police questioned Edward Booth about the Lane incident. Booth arrived at the station on July 9, 1987, and began to describe not the Lane, but the Davies, incident. Booth admitted that he, the defendant, and David Williams attacked and beat Davies on June 27, 1987. The police then arrested the defendant and brought him to the station where he made a statement.

Detective Kutz testified at a hearing to quash the defendant's arrest and suppress his statement. Kutz said he was assigned to investigate the robbery of Samuel Lane and the robbery and death of Mark Davies. He questioned Edward Booth at the police station about the Lane robbery on July 9, 1987. Kutz said he soon realized that Booth was giving details of a different crime. Kutz then showed Booth a photograph of Mark Davies. Booth identified Davies as the victim he, along with the defendant and David Williams, attacked on June 27, 1987.

Booth told the detective that he, with the defendant and David Williams, went to the Jackson Park bridge with baseball bats to commit robberies on June 27, 1987. When Davies walked onto the bridge they beat him with their fists and baseball bats. They took his money and dragged him under the bridge. All three tried to leave in Davies' car, but could not drive a car with a manual transmission. Booth was 14 years old.

Kutz testified that when he finished talking with Booth he and other officers went to 1515 East 65th Street. The police did not have arrest warrants. David Williams had told the police he lived at 1515 East 65th Street when he was at the station on June 28, 1987, being questioned for an unrelated crime. Kutz went to the second floor at 1515 East 65th Street and knocked on the front door. The person who answered told Kutz that Paul and David Williams were outside on the back porch. He let Kutz walk through the apartment to the back porch. When Kutz got to the porch, Detective O'Connell and Officer Hules had arrested Paul and David Williams.

Detective O'Connell testified that he and Officers Hules and Sanders went to the back of the building at 1515 East 65th Street at 9:20 p.m. on July 9, 1987. They were not in uniform. From the ground,

they could see five males standing and talking on the open second-floor porch. The officers walked in through an open gate and up to the second-floor porch. They asked the men their names. When defendant and David Williams identified themselves, the officers arrested them and read them their rights.

They then drove defendant and David Williams to the station and put them in separate rooms. Detectives Kutz and Romic interviewed defendant at 9:45 p.m. Kutz read defendant *Miranda* warnings and told him he could be tried as an adult because he was 16 years old. Defendant at first denied knowledge of the murder. When the detectives confronted him with information they had learned about the crime, he stated he wanted to tell them the truth. He admitted during this interview, which lasted half an hour, that he participated in the attack and murder of Davies. Defendant identified a photograph of Davies as the man he attacked. He signed the back of the photograph and wrote the time as 10:30 p.m. Defendant spoke with an assistant State's Attorney who again advised him of his rights at 12:50 a.m. on July 10, 1987. Two youth officers arrived at 3:30 a.m. Defendant made a court-reported statement at 4 a.m.

Defendant stated that he, David Williams, and Edward Booth went to the Jackson Park bridge with baseball bats to rob "anyone with money." When Davies walked onto the bridge, they beat him with their fists. Defendant stated that David Williams and Booth also hit Davies with the baseball bats. They checked Davies' pockets for money and found car keys. They carried Davies under the bridge. They found Davies' car but found nothing of value in it. Defendant concluded his statement by saying he had been treated well, given food and drink, allowed to go to the bathroom, and no one threatened him or made promises to him. Defendant corrected the statement, initialed the corrections, and signed the statement.

Defendant and David Williams testified that they were arrested in the kitchen of the apartment at 1515 East 65th Street. Defendant also testified that he had been living at 1515 East 65th Street for three or four months before his arrest on July 9, 1987. He then admitted that he told the police on June 28, 1987, and July 9, 1987, that his address was 7637 South Ridgeland.

Gladys Garrett, the defendant's mother, testified that she lived at 7637 South Ridgeland. She learned on the night of July 9, 1987, that two of her sons, Paul and David Williams, had been arrested. She made telephone calls to police stations to locate them. She called the station at 51st and Wentworth at 5 a.m. and was told that defendant was in custody there. She and her husband then drove to 51st and Wentworth and asked to see Paul and David. Garrett stated that she was denied permission to see her sons.

The trial court denied defendant's motion to quash arrest and suppress statements.

At trial, the testimony of witnesses for the prosecution was similar to their testimony at the hearing on the motion to quash and suppress. Defendant's statement was published to the jury. Defendant called no witnesses. The jury found defendant guilty of armed robbery (Ill. Rev. Stat. 1987, ch. 38, par. 18—2(a)) and murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a)). The court sentenced him to 39 years in prison.

■ Defendant first argues on appeal that the police lacked probable cause to arrest him because Edward Booth's statement was unreliable and uncorroborated.

A person may be arrested without a warrant when a police officer has reasonable grounds to believe that the person has committed a crime. (725 ILCS 5/107—2(1)(c) (West 1992).) Probable cause to arrest exists when the totality of the facts and circumstances known to the officer at the time of the arrest are such that a reasonable person would believe the defendant committed the offense. (*People v. Tisler* (1984), 103 Ill. 2d 226, 469 N.E.2d 147.) The statement of a codefendant may give rise to probable cause if it bears sufficient indicia of reliability. (*People v. James* (1987), 118 Ill. 2d 214, 514 N.E.2d 998.) Statements against penal interest possess inherent indicia of reliability. *James*, 118 Ill. 2d at 223.

Defendant argues that the State failed to show that Edward Booth's statement was reliable because there was no evidence to corroborate Booth's story. We disagree.

Detective Kutz testified that Booth came to the station to be interviewed about an unrelated crime. Kutz soon realized that Booth was describing the details of a different crime. Kutz then showed Booth a photograph of Davies. Booth identified Davies as the victim of the crime he committed. There is further corroboration in Booth's description of the crime. He stated that he, defendant, and David Williams beat Davies with their fists and baseball bats. The morgue photograph showed that Davies had been beaten, and the wounds were consistent with those which could have been caused by a baseball bat. Booth stated they dragged Davies under the bridge next to the lagoon after they robbed and beat him. Davies was found in the lagoon. Booth stated they could not take Davies' car because none of them knew how to operate a stick shift. Davies' car had a manual transmission.

We will not disturb the trial court's finding of probable cause on review unless it is manifestly erroneous. (*People v. Bajt* (1983), 113 Ill. App. 3d 459, 447 N.E.2d 432.) Here, Booth's statement could have

been considered reliable by the trial court because he admitted he was involved in the crime, "something which common sense indicates one does not do lightly or falsely." (*James,* 118 Ill. 2d at 224.) Booth did not minimize his involvement. There is no evidence that Booth expected or was promised leniency in exchange for implicating the defendant.

■ Defendant argues that his warrantless arrest violated the fourth amendment because he was arrested on the porch, within the curtilage of David Williams' apartment. Curtilage extends to the area immediately adjacent to the home and is considered to be part of the home for fourth amendment purposes. (*Oliver v. United States* (1984), 466 U.S. 170, 180, 80 L. Ed. 2d 214, 225, 104 S. Ct. 1735, 1742.) The Supreme Court has held that the arrest warrant requirement begins at the threshold of the home and a doorway to a house is considered a "public place" in which there is no expectation of privacy. *United States v. Santana* (1976), 427 U.S. 38, 49 L. Ed. 2d 300, 96 S. Ct. 2406.

In *United States v. Dunn* (1987), 480 U.S. 294, 94 L. Ed. 2d 326, 107 S. Ct. 1134, the Supreme Court held that curtilage questions "should be resolved with particular reference to four factors: the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." *Dunn,* 480 U.S. at 301, 94 L. Ed. 2d at 334-35, 107 S. Ct. at 1139.

In *People v. Lekas* (1987), 155 Ill. App. 3d 391, 508 N.E.2d 221, the police went to the defendant's house without a warrant. When the officers knocked on the door, defendant opened it and stepped or was pulled out by the officers onto the porch. Moments later the codefendant, who was an overnight guest, came onto the porch. Both men were arrested, and the codefendant challenged its legality. The court held that because the codefendant was arrested on the porch, the warrantless arrest, which was supported by probable cause, satisfied the requirements of *Payton v. New York* (1979), 445 U.S. 573, 576, 63 L. Ed. 2d 639, 644, 100 S. Ct. 1371, 1374-75, where the Court held "the Fourth Amendment to the United States Constitution *** prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." *Lekas,* 155 Ill. App. 3d at 413.

Here, defendant was standing on an open porch when the police encountered and arrested him. They did not cross the threshold into the apartment to arrest him. He was not in an area where he had a reasonable expectation of privacy. He was exposed to "public view,

speech, hearing, and touch" as he was standing outside the apartment. See *Santana*, 427 U.S. at 42, 49 L. Ed. 2d at 305, 96 S. Ct. at 2409.

■ We find no merit in defendant's argument that the "arrest process was still continuing when the police brought Paul and David to the vehicle that transported them to the station." An arrest occurs when, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." (*United States v. Mendenhall* (1980), 446 U.S. 544, 554, 64 L. Ed. 2d 497, 509, 100 S. Ct. 1870, 1877.) Illinois courts consider: whether a reasonable person, innocent of any crime, would have considered himself arrested or free to leave, the intent of the officer and the understanding of the arrestee, and whether defendant was told he was free to leave or that he was under arrest. (*People v. Allen* (1993), 249 Ill. App. 3d 1001, 620 N.E.2d 1105.) Detective O'Connell testified that he and Officer Hules climbed the stairs to the open porch on the second floor. Five males were standing on the porch. Defendant identified himself. O'Connell arrested defendant and read him his rights. Defendant was not free to leave. The trial court properly found that this arrest did not violate defendant's fourth amendment right of privacy.

■ We reject defendant's contention that article I, section 6, of the Illinois Constitution grants greater protection from warrantless arrests than does the fourth amendment. Article I, section 6, reads in part: "The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, invasions of privacy ***." (Ill. Const. 1970, art. I, § 6.) Illinois courts have not read this language to expand the warrant requirements of the fourth amendment. Rather, our courts have read the invasion of privacy language in article I, section 6, to apply to invasive techniques of law enforcement not governed by fourth amendment arrest cases. (See *King v. Ryan* (1992), 153 Ill. 2d 449, 607 N.E.2d 154 (right of privacy extends to cover chemical testing for intoxication without probable cause); *People v. DeLaire* (1993), 240 Ill. App. 3d 1012, 610 N.E.2d 1277 (right of privacy covers telephone records); *People v. Jackson* (1983), 116 Ill. App. 3d 430, 452 N.E.2d 85 (right of privacy extends to bank records).) Arrests and the use of the exclusionary rule to discourage arrests without probable cause track fourth amendment jurisprudence. See *Tisler*, 103 Ill. 2d at 241-42.

■ Defendant argues that the trial court erred when it denied his motion to suppress the statement. He argues his statement was involuntary because he "was subjected to lengthy interrogation during the dead of night, the police and State's Attorney did not notify

[defendant]'s parents of the arrest and [defendant]'s mother was denied access to [defendant] during his interrogation."

We will not reverse the trial court's ruling that defendant's confession was voluntary unless it is against the manifest weight of the evidence. (*People v. Prim* (1972), 53 Ill. 2d 62, 70, 289 N.E.2d 601.) To determine voluntariness of statements, the court may consider the age, intelligence, experience and physical condition of the defendant, the length of interrogation, threats, promises, or physical coercion, as well as the presence of a parent or youth officer. (*People v. Martin* (1984), 102 Ill. 2d 412, 427, 466 N.E.2d 228.) The police have a statutory duty to contact a minor's parents once he is taken into custody. (Ill. Rev. Stat. 1987, ch. 37, par. 805—6(2).) But, failure to comply does not always require exclusion of a minor's statements. (*People v. Stachelek* (1986), 145 Ill. App. 3d 391, 402, 495 N.E.2d 984.) The absence of a parent while being questioned is only one element in considering whether a confession is voluntary. *In re S.D.S.* (1982), 103 Ill. App. 3d 1008, 431 N.E.2d 759.

The record shows that defendant was not "subjected to lengthy interrogation." He was interviewed three times. He received *Miranda* warnings at least four times. The first interview began at 9:45 p.m. and lasted about half an hour. Defendant confessed within this half hour. The assistant State's Attorney interviewed defendant for 25 minutes at 12:50 a.m. Defendant began his court-reported statement at 4:15 a.m. Two youth officers were then present. Defendant was 16 years old. It is undisputed that he was not threatened or promised anything or physically abused. We believe the court properly found that the confession was voluntary.

■ Defendant argues that the court erred when it refused to examine prospective jurors about possible racial bias after a venire member made a biased remark. During *voir dire* a venire member said his son worked as a police officer. The court asked whether he spoke with his son about his work, and the venire member responded that he was biased against blacks. The court dismissed this person for cause. Defendant asked the court to dismiss the remaining venire members or ask them whether they had become biased upon hearing the remark. The court denied these requests.

A reviewing court will reverse a conviction because of remarks made within hearing of the venire only if those remarks are so prejudicial as to preclude the jurors from reaching a verdict based on the evidence before them. (*People v. Del Vecchio* (1985), 105 Ill. 2d 414, 429, 475 N.E.2d 840.) In *Del Vecchio*, when the court asked a venire member if she had an opinion of the defendant's guilt, she stated: " 'I think the guy shouldn't be out walking the streets.' " (105 Ill. 2d at

429.) The trial court dismissed this venire member but did not interrogate or admonish the remaining venire members about the remark. The supreme court held that this single isolated comment was insufficient to cause jurors to be unable to reach a verdict based solely on the evidence.

We do not believe that the remark in this case was so prejudicial that it precluded the jurors from reaching a verdict based on the evidence. The remaining members stated as a group that they believed defendant was innocent until proven guilty beyond a reasonable doubt, the State had the burden of proof, and they could be fair and impartial jurors.

■ Defendant next argues that the trial court's hostility toward defense counsel prejudiced the jury. He cites to the court's response to defense counsel's objection that the court was unfairly limiting the scope of his cross-examination of a witness. Defendant also cites to comments made by the judge in which he admitted to having a "negative" attitude toward defense counsel.

Both comments were made outside the presence of the jury. The judge also noted that any negative attitude he had toward defense counsel was not witnessed by the jury. We find the comments neither prejudicial nor a material factor in defendant's conviction.

■ Defendant finally argues that the court improperly sentenced him to 39 years in prison. He argues the court erred in considering a robbery committed by defendant where he had not been convicted of the crime. Defendant also claims it was error for the court to consider in aggravation the victim's perceived homosexuality as a motive of the offense when it was not a statutory element in aggravation at the time of the offense and where there was no evidence that the defendant was motivated by this perception.

The State responds that other offenses are admissible in a sentencing hearing where defendant has the opportunity to cross-examine the witnesses testifying about the offense. The State cites to *People v. Jackson* (1992), 149 Ill. 2d 540, 599 N.E.2d 926, where the court held:

> "Such evidence *** should be presented by witnesses who can be confronted and cross-examined, rather than by hearsay allegations in the presentence report, and the defendant should have an opportunity to rebut the testimony. [Citations.]" *Williams*, 149 Ill. 2d at 548.

Samuel Lane testified at the sentencing hearing that defendant beat and robbed him at the Jackson Park lagoon the day after defendant attacked Davies. Defendant had an opportunity to cross-examine Lane and to rebut the testimony. We find the testimony was properly admitted and considered by the court at the sentencing hearing.

As to the court's consideration that defendant targeted persons he perceived to be homosexuals, defendant is correct that at the time of the offense gender preference of the victim was not listed under the Unified Code of Corrections as an element in aggravation. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.2.) But, the list of aggravating elements in the statute is not exclusive. (*People v. Floyd* (1987), 160 Ill. App. 3d 80, 88, 512 N.E.2d 1378.) A sentencing court may base the sentence on elements other than those listed in the statute so long as they are consistent with the statute. *People v. Bohlander* (1992), 225 Ill. App. 3d 1055, 1057, 589 N.E.2d 139.

The record shows that defendant intended to target persons he perceived were homosexual. Detective Kutz testified that Booth admitted that he, defendant, and David Williams went to Jackson Park to rob homosexuals. Detective Romic testified that defendant used a term derogatory to homosexuals in describing the site of the crime.

The sentencing court may consider abnormal or subnormal tendencies, natural inclination or aversion to commit crime, the stimuli which motivate a defendant's conduct, and his life, family, occupation, and criminal record. (*People v. Gaines* (1974), 21 Ill. App. 3d 839, 847, 316 N.E.2d 14.) We find the court did not err when it considered that defendant's attack on Davies was motivated in part by defendant's belief that Davies was a homosexual. It was a permissible consideration of a nonstatutory element in aggravation consistent with the statute.

Affirmed.

HOFFMAN, P.J., and THEIS, J., concur.