THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KAREEM JETT, Defendant-Appellant.

Fifth District    No. 5—95—0546

Opinion filed February 18, 1998.

Daniel M. Kirwan and Larry R. Wells, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

William Haine, State's Attorney, of Edwardsville (Norbert J. Goetten, Stephen E. Norris, and Kevin Sweeney, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE CHAPMAN delivered the opinion of the court:
Fifteen-year-old Kareem Jett was tried before a jury on charges

of first-degree murder, attempted murder, home invasion, and armed robbery. One of the most incriminating pieces of evidence against defendant was the statement he made shortly after his arrest. Defendant was convicted and was sentenced to a 50-year prison term for the murder of 87-year-old Irwin Dollinger, a consecutive 25-year prison term for the attempted murder of Bernice Boda, and two concurrent 10-year prison terms for armed robbery and home invasion.

On his appeal defendant raises the following issues: (1) whether the court erred in denying his motion to suppress, (2) whether he is entitled to a new sentencing hearing, and (3) whether his sentence should be reduced. We affirm.

At trial, 68-year-old Bernice Boda testified that on October 7, 1993, she went to the senior citizens' center with her friend Irwin Dollinger, who was 87 years old. Around 10 o'clock that evening they went back to her house. As they were entering, two young males forced their way into the house. Boda took the telephone off the hook to try to call for help. One of the young men took the telephone and struck her in the head with it. The other young man beat Dollinger. Boda was knocked down, was kicked in the ribs, and was attacked with a knife. Her attacker tried to cut her throat. Boda lost consciousness, but when she regained consciousness, she was able to reach the telephone and call an operator. Boda could not identify her attackers. She had to have four surgeries to correct her many injuries.

Boda testified that Dollinger told the offenders: "Please don't hurt us. We're old people. You can take anything we've got, but don't hurt us." The offender who had attacked Dollinger responded by hitting him in the stomach and knocking the air out of him. Meanwhile, Boda fell to the ground, and the other offender kicked her hard in the ribs. At some point, one of the offenders broke a vase over her head.

Boda testified that one of the offenders pulled out a steak knife and tried to cut her throat. Boda tried to kick him in the groin, and he said, "You're a spunky old bitch." He then cut her throat and she lost consciousness. Dollinger's throat was cut as well. The offenders then took Boda's purse and Dollinger's wallet and car keys. They drove away in Dollinger's car.

Neurosurgeon Mark Eichler testified that Bernice Boda had open cuts to her head, as well as the cut throat. She had multiple facial fractures, including a fracture of the maxillary sinus and orbital blowout fractures. In addition, she had numerous injuries below the neck, including fractured ribs. Her most serious injury was a subdural hematoma, or bleeding on the brain, which caused damage to brain tissue. As a result of her injuries, Boda had major surgery four

different times. Even after surgery, she suffered from mental confusion, severe headaches, and a lack of strength.

Pathologist Charles Short performed the autopsy on Irwin Dollinger. His examination revealed blows that were consistent with having been administered with a cylindrical object or a piece of concrete. Dollinger suffered swollen eyes, a cut ear, a broken sternum, a large neck wound, seven cuts on the scalp, and a fractured skull. The cause of death was blunt trauma to the head.

In defendant's second videotaped statement made to the police after his arrest, he admitted that he hit Dollinger on the head with a brick. Also, in that statement defendant admitted to having possession of a pole used to beat Dollinger. Both defendant's statement and his codefendant's statement describe that it was defendant's accomplice who cut Boda's throat. Thus, the evidence suggests that defendant fatally injured Dollinger while his accomplice was attacking Boda. The evidence also indicates that defendant injured both victims while he was in the house. A shoeprint from defendant's shoe was found on Boda's slacks. At sentencing, defendant admitted to helping to both beat Dollinger and stomp Boda.

Turning to defendant's first issue, the denial of his motion to suppress, we note that defendant makes several arguments. First, defendant argues that reasonable efforts were not made to contact his parents after he was arrested. Defendant contends that given this violation of section 5—6 of the Juvenile Court Act of 1987 (705 ILCS 405/5—6 (West 1996)), his statement must be suppressed.

Under section 5—6(2), a law enforcement officer who takes into custody a minor who he believes is delinquent "shall *** immediately make a reasonable attempt to notify the parent or other person legally responsible for the minor's care." 705 ILCS 405/5—6(2) (West 1996). Although a violation of section 5—6 of the Juvenile Court Act of 1987 is a factor in determining whether the defendant's statement should be suppressed, a failure to comply with this section does not require the exclusion of the minor's statement. *People v. Denton*, 256 Ill. App. 3d 403, 405, 628 N.E.2d 900, 902 (1993); *People v. Pace*, 225 Ill. App. 3d 415, 429, 587 N.E.2d 1257, 1267 (1992).

In this case, the police detectives arrested defendant at his high school at approximately 1:30 p.m. The police informed the high school principal that defendant was coming with them. The principal told the detectives that he would notify defendant's parents. The principal testified that he did in fact contact defendant's mother's place of employment, but she was not there. He testified that he left a message at her work that he needed her to return his call about something that was important regarding defendant. His call was not returned.

Officer David Bradford testified that he was one of the officers who arrested defendant at the high school, transported him back to the police station, and interviewed him. Officer Bradford is an investigating officer as well as a juvenile officer. He testified that defendant was given pizza and soda to eat. He testified that defendant was repeatedly informed of his rights and that those rights were explained to him. Defendant was also repeatedly asked if he wanted counsel or if he wanted to speak with his parents. Bradford testified that defendant adamantly refused the offer and said that he especially did not want to speak with his mother. Bradford testified that, during this time, attempts were being made to contact defendant's parents. Bradford testified that he learned that state agent Manis finally contacted defendant's mother at 7 p.m.

State Police Agent Brian Latham testified that he was present during defendant's questioning, and at no time did defendant ask to see anyone or to have anyone else present.

The minor's mother, Karitta Jett, testified that although she was out of her office during the afternoon, her staff would have contacted her had there been any messages. Karitta Jett testified that her office did not advise her of any messages. Karitta also testified that her home answering machine was on, but no message was left that day. Karitta testified that she was not contacted by the police until 7 p.m. She further testified that, upon arriving at the police station, she requested three or four times to see her son but was not permitted to see him until around 9 p.m.

Defendant testified that the officers never told him that he could see his mother or father. Defendant also testified that when he was told his mother was at the station, he advised the officers that he did not want to see his mother because he feared she would become upset.

The Juvenile Court Act of 1987 requires the authorities to make a reasonable attempt to notify a minor's parents immediately upon his arrest. 705 ILCS 405/5—6 (West 1996). Officer Bradford was a juvenile officer who accompanied defendant during his arrest and interrogation. Defendant was given food and drink, and he did not complain that he was hungry or tired during questioning. The police took defendant to the station around 1:30 p.m. and claim that he gave his first statement at around 3:30 p.m. Karitta Jett received actual notice of her son's arrest within six hours, and the testimony of the high school principal and Officer Bradford indicates that efforts were made to notify her earlier. Although Karitta Jett testified that she was not allowed to see her son immediately upon her arrival at the station, defendant testified that when told his mother was there, he refused to see her. Considering the totality of the circumstances,

we cannot find that the trial court erred in denying defendant's motion to suppress based on the failure to timely notify his parents.

■ Defendant next argues that the trial court erroneously considered his alleged criminal history in determining whether or not to suppress his statement. In its order denying the motion to suppress, the trial court stated, "This defendant was on probation and could be said to have been through the process to some extent and at least dealt with the police." Defendant argues that the court considered his statement to be voluntary because the court erroneously believed he was on probation and was knowledgeable of the criminal justice system.

Although it is undisputed that defendant was not on probation at the time of the suppression hearing, he had previously been arrested on a shoplifting charge and placed on probation. He also had a previous curfew violation. Although the trial court refers to defendant as being on probation, it is evident that the trial court's concern is with the fact that defendant "could be said to have been through the process to some extent and at least dealt with the police." Whether or not defendant was on probation at the time of the suppression hearing was not the pivotal factor in considering whether or not defendant's statement was voluntary. Rather, the court's concern was whether or not defendant had had previous dealings with the police and was to some extent knowledgeable about the system. It is undisputed that defendant had been arrested for shoplifting and received probation. Thus, we cannot find that the trial court's erroneous belief that defendant was on probation at the time of the hearing resulted in a denial of due process.

Defendant next argues that the trial court erroneously applied adult standards in considering his motion to suppress his statement. Defendant contends that the Juvenile Court Act of 1987 (705 ILCS 405/1—1 *et seq.* (West 1996)) requires that the trial court apply heightened scrutiny in favor of minors in considering a motion to suppress. Defendant cites the trial court's error in *People v. Simmons*, 60 Ill. 2d 173, 326 N.E.2d 383 (1975), as an example of the trial court's error in this case.

In *Simmons,* a 16-year-old youth was convicted on two counts of murder, and in denying the defendant's motion to suppress, the trial court said:

> "I suppose the basic question we have to answer here is whether or not a boy 16 years old *** should be handled differently than an adult in his being advised of his rights.
>
> It would be my holding[,] first of all, that he shouldn't be handled any differently than an adult." *Simmons,* 60 Ill. 2d at 181, 326 N.E.2d at 387.

The supreme court determined that the trial court did not use the "special care in scrutinizing the record" required in this case of a 16-year-old borderline mentally retarded boy. The court held that because the trial court did not use the proper standard in ascertaining the voluntariness of a statement made by the defendant to a polygraph operator, defendant's conviction would be vacated and the case would be remanded for a determination of the voluntariness of the statement under proper standards. *Simmons*, 60 Ill. 2d at 181, 326 N.E.2d at 387.

■Although the supreme court did refer to the need to use special care in scrutinizing the record, it held that "[w]hether a statement was voluntarily given must be determined from the 'totality of the circumstances.'" *Simmons*, 60 Ill. 2d at 179, 326 N.E.2d at 386. The totality of the circumstances includes the age, intelligence, experience, and physical condition of the defendant and the length of interrogation, threats, promises, or physical coercion, as well as the presence of a parent or youth officer. *People v. Bernasco*, 138 Ill. 2d 349, 562 N.E.2d 958 (1990); *People v. Williams*, 275 Ill. App. 3d 249, 655 N.E.2d 1071 (1995). This court will reverse a trial court's determination that a confession is voluntary only if that determination is contrary to the manifest weight of the evidence. *People v. Denton*, 256 Ill. App. 3d 403, 406, 628 N.E.2d 900, 902 (1993).

■ Defendant argues that because of his age and limited intelligence he did not knowingly and voluntarily waive his rights before he made a statement to the police. Although it is undisputed that defendant was 15 years old and attended special education courses at the time of his arrest, even a teenager with low scores on intelligence tests can make a voluntary and admissible confession to a crime. See *In re W.C.*, 167 Ill. 2d 307, 657 N.E.2d 908 (1995). Defendant also argues that his response during the taking of his statement, that he was making the statement because he "didn't wanna [*sic*] get in any trouble," clearly shows that he did not comprehend the magnitude of his statement. Defendant contends that despite the purported waiver of his *Miranda* rights (*Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966)), his constitutional rights were not knowingly waived.

The greatest care must be taken to assure that a juvenile's incriminating statement was not the product of ignorance of rights or of adolescent fantasy, fright, or despair. *In re W.C.*, 167 Ill. 2d at 328, 657 N.E.2d at 919. Officer Bradford testified that he advised defendant of his *Miranda* rights in the assistant principal's office at the high school. Defendant was taken to an interview room at the mayor's office and was again warned of his rights. Officer Bradford testified

that defendant read back those rights to the detectives and signed a written waiver. Officer Bradford also testified that defendant was given pizza and soda and was repeatedly asked if he wanted to speak with counsel or his parents. Bradford testified that defendant refused to speak with his parents, saying that he especially did not want to talk with his mother.

The trial judge was able to view defendant's demeanor during the taking of his statement, as the statement was videotaped. The trial judge found that defendant knowingly, willingly, and clearly waived his rights. We have considered the issues raised by the defendant and have reviewed the record and cannot find that the trial court's determination was against the manifest weight of the evidence.

The next issue on appeal is whether defendant is entitled to a new sentencing hearing because the court erroneously considered the hearsay statement of a nontestifying codefendant in determining the sentence. Defendant argues that codefendant Townser's statement was unreliable hearsay and should not have been admitted at defendant's sentencing hearing.

■ Defendant cites the supreme court cases of *People v. Turner*, 128 Ill. 2d 540, 539 N.E.2d 1196 (1989), and *People v. Rogers*, 123 Ill. 2d 487, 528 N.E.2d 667 (1988), for the proposition that hearsay statements by codefendants are presumptively suspect and are not admissible at sentencing hearings. It is true that on the facts of those cases hearsay statements by codefendants were not admissible at death penalty hearings. *Turner*, 128 Ill. 2d 540, 539 N.E.2d 1196; *Rogers*, 123 Ill. 2d 487, 528 N.E.2d 667. But the supreme court did not hold that all such statements were inadmissible.

*Rogers* held that in the sentencing hearing the confessions of an accomplice which incriminate the defendant are presumptively unreliable and should not be admitted into evidence unless sufficient indicia of reliability exist to overcome the presumption. *Rogers* required a new sentencing hearing when the jury was allowed to hear the taped confessions of two codefendants. The court found that there was a strong presumption of unreliability given the timing of the confessions, the relationship of the accomplices, and the highly prejudicial confession that the defendant initiated the idea for the killing. *Rogers*, 123 Ill. 2d at 520, 528 N.E.2d at 683.

In *Turner*, 128 Ill. 2d at 566, 539 N.E.2d at 1207, the court reiterated the general rule that hearsay testimony which meets the relevance and reliability test is admissible at the sentencing hearing. However, the court remanded the case for a new sentencing hearing because the court did not believe that there were sufficient indicia of reliability to overcome the presumption that the codefendant's confes-

sion was unreliable. *Turner*, 128 Ill. 2d at 573, 539 N.E.2d at 1210. In particular, the court found that the confession was not sufficiently reliable because the codefendant's confession minimized his role in the rape and murder at the expense of the defendant and further did not refer to the planning of the crime with the defendant. *Turner*, 128 Ill. 2d at 572, 539 N.E.2d at 1210. In the case at bar, the trial court allowed Investigator Bradford to testify at the sentencing hearing to the hearsay statement of codefendant Townser in which Townser confessed to his own role in the murder and implicated defendant. Investigator Bradford testified that Townser told him that he had kicked both Irwin Dollinger and Bernice Boda. Townser admitted that he was the one who cut Boda's throat. He also admitted that he held Dollinger's head while defendant cut Dollinger's throat. Townser said that defendant had also kicked both victims and had hit Dollinger with a brick and a stick. According to Townser, the incident began because defendant wanted to take Dollinger's car.

The ordinary rules of evidence which govern at trial are relaxed during the sentencing hearing. *People v. Blanck*, 263 Ill. App. 3d 224, 234, 635 N.E.2d 1356, 1364 (1994). The only requirement for admission is that the evidence be reliable and relevant as determined by the trial court within its sound discretion. *Blanck*, 263 Ill. App. 3d at 234, 635 N.E.2d at 1364. Hearsay evidence is not *per se* inadmissible; a hearsay objection affects the weight rather than the admissibility of the evidence. *People v. Spears*, 221 Ill. App. 3d 430, 437, 582 N.E.2d 227, 231 (1991). Hearsay evidence may be found to be relevant, reliable, and admissible when it is corroborated by other evidence. *People v. Hudson*, 157 Ill. 2d 401, 450, 626 N.E.2d 161, 182 (1993). It has long been held that a sentencing judge will be given wide latitude in his discretionary determination of the types and sources of evidence that may be admitted to assist him in determining the kind and extent of punishment to be imposed within the statutory limits. *People v. Brumley*, 229 Ill. App. 3d 16, 20, 593 N.E.2d 660, 663 (1992).

■ Townser's statement was clearly against his penal interest. He admitted to cutting Boda's throat and helping to cut Dollinger's throat. In addition, what Townser said about defendant was corroborated by the physical evidence and by defendant's own statements and testimony. One of the shoeprints found on Boda's pants was consistent with defendant's shoes and inconsistent with Townser's. Defendant admitted to hitting Dollinger with a brick and admitted to handling the stick used to beat Dollinger. Dollinger's blood was found on defendant's shoes, and defendant's fingerprints were found inside Dollinger's car. Also, defendant testified at sentencing that he hit Dollinger and stomped on Boda. Thus, the physical evidence and

defendant's own testimony corroborated Townser's confession. We believe there are sufficient indicia of reliability to overcome the presumption that the codefendant's confession is unreliable. Courts may consider at the sentencing hearing hearsay that is reliable and relevant. *Blanck*, 263 Ill. App. 3d at 234, 635 N.E.2d at 1364. The trial court found Townser's statement to Investigator Bradford to be reliable and relevant to the sentencing of defendant. The reliability of Townser's statement is supported by the fact that it was made against Townser's penal interest. In addition, the statement is corroborated by other evidence. We find, therefore, that the trial court did not abuse its discretion in considering the hearsay statement at sentencing.

■ The final issue on appeal is whether defendant's sentence should be reduced. Defendant was sentenced to 50 years' imprisonment for Dollinger's murder, and 25 years' imprisonment for the attempted first-degree murder of Boda. Defendant argues that this sentence is an abuse of discretion because of his youth, immaturity, lack of education, and lack of a prior record and because it is disproportionate to the sentence given to his 18-year-old codefendant.

A sentence passed within the available range of penalties is reviewed on the abuse-of-discretion standard. *People v. Steffens*, 131 Ill. App. 3d 141, 151, 475 N.E.2d 606, 615 (1985). In this case, the court could have sentenced defendant to a 100-year extended prison term for committing crimes against victims over 60 years of age. See 730 ILCS 5/5—8—2, 5—5—3.2(b) (West 1994). The court did not do this. Defendant is eligible for day-for-day good-time credit; therefore, his time in prison may be reduced to 25 years' imprisonment for the murder of Dollinger and 12½ years' imprisonment for attempted murder. See 730 ILCS 5/3—6—3(a)(2) (West 1994). Thus, he may be released after serving 37½ years' imprisonment. The court sentenced defendant to terms that are lower than the maximum authorized by law.

Defendant also complains that Townser received a lesser sentence than he did. Defendant's situation is not comparable to Townser's because Townser pled guilty. Generally, there is nothing wrong with the disparity between the sentences imposed on a defendant who pleads guilty and a defendant who does not. *People v. Cooper*, 239 Ill. App. 3d 336, 363, 606 N.E.2d 705, 725 (1992). Given the record before us, we cannot find that the trial court abused its discretion in sentencing defendant. The judgment of the trial court is affirmed.

Affirmed.

WELCH, P.J., and MAAG, J., concur.