*In re* H.D.B., Jr., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. H.D.B., Jr., a Minor, Respondent-Appellant).

Fourth District    No. 4—97—0993

Opinion filed December 2, 1998.

Daniel D. Yuhas and Gary R. Peterson, both of State Appellate Defender's Office, of Springfield, for appellant.

John C. Piland, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and Jeffrey K. Davison, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

Respondent minor H.D.B., Jr. (born January 8, 1981), appeals from the orders of the circuit court of Champaign County adjudicating him delinquent for unlawful possession of less than 15 grams of a substance containing cocaine with intent to deliver (720 ILCS 570/401(c)(2) (West 1996)) and committing him to the Department of Corrections, Juvenile Division. The issues on appeal are whether H.D.B.'s first confession should have been suppressed as involuntary and whether the second confession should have been suppressed as the fruit of the illegal first confession. We reverse and remand for a new trial.

University of Illinois police officer John Brown, a six-year veteran assigned to the Illinois State Police Drug Task Force X as an inspector, testified that at approximately 5 p.m. on May 28, 1997, he took part in the execution of a search warrant at 29 Mahoning Drive, Rantoul, Illinois. The search warrant was issued on the basis of a controlled buy of crack cocaine by a confidential source at that location, and the warrant was issued for the seizure of cocaine. The subject building was a gray and white trailer with the number "29" on it. After the tactical team secured the trailer, Brown and other task force members entered. H.D.B. was one of the persons found in the trailer. As a normal routine, the tactical team handcuffed everyone inside. H.D.B. was seated on a chair in the kitchen and living room area when Brown entered. Brown spoke to H.D.B. after most of the search had been completed, about 20 minutes after entry. The conversation took place in the far back bedroom where H.D.B. was walked by Brown and Sergeant Russell Perkins. Prior to the conversation, several rocks of crack cocaine had been found. The main substance of the conversation was to find out if the other occupant of the trailer, Wendy Robertson, was involved with the crack cocaine. Robertson's infant was also found in the trailer. H.D.B. said he had sold crack cocaine from that residence in an ongoing process over the past week or so. Brown testified his demeanor at the time of the conversation was calm, somewhat quiet, a normal conversational tone. H.D.B. was calm and cooperative. He did not appear excited. H.D.B. was determined to be 16 years old at that time. No threats or promises were made by the officers. The conversation

lasted about three minutes. The Illinois Department of Children and Family Services (DCFS) was mentioned with respect to the need to contact DCFS for Robertson's child if she was involved in the cocaine dealing. H.D.B. said Robertson was not involved. As a result, DCFS was not called. Prior to the conversation with H.D.B. in the bedroom, Brown had conversed with a woman identifying herself as H.D.B.'s mother outside the trailer. That occurred about 10 or 15 minutes after the execution of the warrant. At that time, Brown told the woman that the determination to arrest H.D.B. had not yet been made. Brown explained that H.D.B. had been detained inside the trailer and questioned the woman about her knowledge of H.D.B.'s relationship with Robertson and where he lived. Brown did not recall the woman asking to speak to H.D.B. Prior to the conversation with H.D.B. in the bedroom, Brown told him that his mother was outside. H.D.B. did not ask to see his mother. Brown had other conversations with the woman outside the trailer prior to H.D.B. being taken to the Rantoul police department. He informed her of that fact and that when they got through he would determine if H.D.B. would be released or transported to the youth detention center. From the time of the entry of the trailer to the time Brown left for the Rantoul police department was between 40 minutes and an hour. H.D.B. was taken to the police department about 20 minutes after the conversation in the bedroom.

Brown had another conversation with H.D.B. in the juvenile holding area at the police department about 15 to 20 minutes after he arrived there. That would have been at about 6:20 p.m. No one else was present. At that time, H.D.B. was advised of his constitutional rights. Brown made sure H.D.B. understood each right before proceeding on to the next one. H.D.B. said he understood his rights. Brown's demeanor during the conversation was calm and he used a normal conversational tone. H.D.B. remained very cooperative. His demeanor did not change. This meeting lasted 5 to 10 minutes. His mother was present at the station and H.D.B. knew she was there. He did not ask to see her. She did not request to see him. He was ultimately released to his mother after being fingerprinted and photographed. The whole process took 45 minutes. He was released at about 7 p.m.

Brown, H.D.B., and S.D.B., H.D.B's mother, testified concerning S.D.B.'s presence at the trailer and at the police station. This testimony is well known to the parties and will not be set forth in detail.

Sixteen-year-old H.D.B. testified that at 5 p.m. on May 28, 1997, he was sleeping on the couch at 29 Mahoning. When he heard a loud bang and breaking glass, he ran to the tub because he thought it was gunshots. Then he heard somebody saying "police, police, police. Get

on the ground." At that time, he was curled up in the bathtub. A person in a ski mask had a gun pointed at him. H.D.B. then got out of the tub, lay on the ground (floor), and was handcuffed. He was then taken into the front room and a second pair of handcuffs was placed on him. He sat on the couch while the officers searched the mobile home. One officer told him he would be going to "county" and H.D.B. replied that he was only 16 and would be going to the detention center. His girlfriend, Robertson, and her son were in the mobile home too. Robertson was 21 years old. Her son was one year old. Robertson was sitting on the couch, handcuffed, crying. One of the officers had the baby. H.D.B. was moved to the kitchen while a dog searched the front room. He was then brought into the back room of the trailer for questioning. There were four officers with him. They asked him about money lying on the bed. H.D.B. said $150 of that was money his aunt loaned him for school supplies. They then told him Robertson would be taken to jail and her son would be taken to DCFS if he did not admit his involvement with the drugs found in the trailer. "And then I said, I had stood, so I froze up, and like, it was like, 'be a man, be a man. You don't want to see her go to jail. Be a man.' So I admitted to it that it was mine." When the officers commented about DCFS and Robertson going to jail, H.D.B. thought he did not want her to go to jail and the child to be taken from her. He was scared, did not want this to happen, and so he admitted to being involved with the drugs. He was then taken to the front room. Before the officers told him about Robertson going to jail and about DCFS, he had not made any admissions, other than discussing the $150. During the conversation, he was "real scared," had tears in his eyes, and was shaking. He learned his mother was outside before the conversation in the bedroom. He did not ask to see her.

At the police department, his shoes, earrings, and jersey were removed, and he sat in a room by himself. When Brown came in, H.D.B. asked if he could call his mother. He was told, "in a minute." He was then fingerprinted and photographed. He again asked Brown to be allowed to talk to his mother and he was again told, "in a minute." H.D.B. was then taken to the juvenile holding area and read his rights. He said he understood his rights. The first time he got to see his mother was when he was released. With regard to the conversation with the police officer in the trailer in which he indicated he knew he was headed for the youth detention center, he knew the procedure because he had been there twice. He is a junior in high school and is going to general equivalency diploma classes. He can read and write well.

The trial court found that H.D.B. and his mother never asked to

see each other; that in light of H.D.B.'s prior experience with the system and having been advised of his rights on those occasions, he knew his right against self-incrimination and understood the juvenile procedures; the entire time involved, from the execution of the search warrant to H.D.B.'s release, was less than two hours; the questioning in the bedroom lasted less than three minutes; and the questioning at the station was so quick that H.D.B. was being released before his mother could get to the station. Brown's questioning about Robertson's involvement was found by the trial court not to be an attempt to coerce a confession from H.D.B. Given the totality of the circumstances and the credibility of the witnesses, in particular the credibility of Officer Brown, the trial court found H.D.B. was not coerced or threatened or in any way caused to make the statements. The motion to suppress was denied.

The trial court's ruling on a motion to suppress will not be reversed unless manifestly erroneous. It is the function of the trial court, not this court, to assess the credibility of witnesses and resolve conflicts in their testimony. *People v. Melock*, 149 Ill. 2d 423, 432, 599 N.E.2d 941, 944 (1992).

> "Incriminating statements which have been obtained in violation of *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, are inadmissible at trial. A suspect's entitlement to *Miranda* warnings is triggered when he is subjected to custodial interrogation, 'or otherwise deprived of his freedom of action in any significant way.' (*Miranda*, 384 U.S. at 444, 16 L. Ed. 2d at 706, 86 S. Ct. at 1612; see also *People v. Lucas* (1989), 132 Ill. 2d 399, 417.)
> \*\*\*
>
> In determining whether an interrogation is custodial, courts consider several factors, including: (1) the time and place of the confrontation; (2) the number of police officers present; (3) the presence or absence of family or friends; (4) any indicia of a formal arrest procedure, such as physical restraint, the show of weapons or force, booking or fingerprinting; and (5) the manner by which the individual arrived at the place of the interrogation. See *People v. Brown* (1990), 136 Ill. 2d 116, 124-25; *Lucas*, 132 Ill. 2d at 417."

*Melock*, 149 Ill. 2d at 439-40, 599 N.E.2d at 948.

The State argues that the statement H.D.B. made in the bedroom of the trailer was volunteered so *Miranda* warnings were not required. We disagree.

First, H.D.B. was in custody. Second, it is undisputed that H.D.B. made the statement in response to Brown's questioning. Third, it is also undisputed that H.D.B. was not advised of his *Miranda* rights at that time. Although the State cites cases that held that an officer is not required to interrupt and give *Miranda* warnings to a suspect in

the process of making a spontaneously volunteered statement prior to any questioning by the officer (*In re Orr*, 38 Ill. 2d 417, 423, 231 N.E.2d 424, 427 (1967); *People v. Baer*, 19 Ill. App. 3d 346, 348, 311 N.E.2d 418, 420 (1984)), those cases are factually distinguishable. Also distinguishable is the State's cited case of *People v. Eveans*, 277 Ill. App. 3d 36, 46, 660 N.E.2d 240, 247 (1996), in which the issue was whether the defendant should have been readmonished with her *Miranda* rights at the time she made a statement to the sheriff.

The State does not argue, and has apparently abandoned, the theory of the trial court that Brown's questioning of respondent in the bedroom was simply an inquiry of Robertson's involvement to avoid calling DCFS and not an attempt to obtain a confession from H.D.B. *Miranda* warnings were required prior to that interrogation, and the confession in the bedroom should have been suppressed.

We, therefore, reverse the judgment of the trial court. The record is not clear as to what weight the trial court gave to the respondent's first confession in finding the respondent delinquent. For purposes of judicial economy and for the purpose of assisting the trial court on remand, we also address the issue of the admissibility of the second confession.

We disagree with respondent that the evidence established that the first confession was coerced. The suppression of the first confession does not require the suppression of the confession at the police station.

■ In assessing the admissibility of a confession, the trial court determines whether, under the totality of the circumstances, the statement was made freely, voluntarily, and without compulsion or inducement of any sort, or whether the individual's will was overcome at the time of the confession. Although no single fact is determinative, factors to be considered are the age, education, and intelligence of the accused; the duration of the questioning; whether he received his constitutional rights; and whether he was subject to any physical punishment. *Melock*, 149 Ill. 2d at 447, 599 N.E.2d at 951.

■ Respondent was not arrested and taken to the police station because of what he said in the bedroom. Instead, Brown testified respondent was going to be taken to the police station anyway based on the officers' prior knowledge. At the police station, H.D.B. was given and understood his *Miranda* rights. H.D.B.'s mother testified that she was not present at the police station and did not ask to speak to her son there. Indeed, the trial court found, based on the credibility of the witnesses, that she and H.D.B. never asked to speak to each other. This finding is not manifestly erroneous.

■ Evidence obtained by exploiting a constitutional violation is

subject to suppression as the "fruit of the poisonous tree." *People v. Winsett*, 153 Ill. 2d 335, 341, 606 N.E.2d 1186, 1190-91 (1992). However, a distinction lies between the violation of a constitutional right and a violation of the prophylactic rules announced in *Miranda*. *Winsett*, 153 Ill. 2d at 351-64, 606 N.E.2d at 1195-1201. "Consequently, where the police violate the prophylactic rules developed in *Miranda*, but do not actually violate the defendant's fifth amendment privilege against self-incrimination, the fruit of the poisonous tree doctrine will not be applied to exclude physical or testimonial evidence derived from the defendant's statements." *Winsett*, 153 Ill. 2d at 353-54, 606 N.E.2d at 1196. When a defendant admits involvement in a crime pursuant to police questioning and prior to being given *Miranda* warnings, the first statement is inadmissible, but a subsequent statement given at the police headquarters after waiving *Miranda* rights is not suppressed on the basis of the fruit of the poisonous tree doctrine. *Winsett*, 153 Ill. 2d at 356-57, 606 N.E.2d at 1197-98, discussing *Oregon v. Elstad*, 470 U.S. 298, 301-05, 84 L. Ed. 2d 222, 227-30, 105 S. Ct. 1285, 1288-91 (1985).

Because of the distinction between a violation of constitutional rights and a violation of the *Miranda* rules, respondent argues that the first confession was coerced in light of the inquiry concerning Robertson's involvement and the failure of the police to allow H.D.B. to meet with his mother. Although the failure to give H.D.B. an opportunity to talk to his mother prior to the first questioning may have been a violation of the Juvenile Court Act of 1987 (705 ILCS 405/5—6(1), (2) (West 1996)), respondent admits that the statement is not *per se* inadmissible but is a circumstance to consider in determining the voluntariness of the statement. *People v. Jett*, 294 Ill. App. 3d 822, 825, 691 N.E.2d 145, 148-49 (1998); *People v. Anderson*, 276 Ill. App. 3d 1, 6, 657 N.E.2d 57, 61-62 (1995) (referring to a similar provision relating to minors requiring authoritative intervention); *People v. Hernandez*, 267 Ill. App. 3d 429, 433, 644 N.E.2d 769, 773 (1994). In light of H.D.B.'s experience with the legal system, his knowledge of the presence of his mother outside the trailer, and his failure to ask to speak to her prior to making a statement to Brown in the trailer, the trial court's finding that the statement in the trailer was voluntary was not manifestly erroneous. See *People v. Sneed*, 274 Ill. App. 3d 287, 294, 653 N.E.2d 1349, 1355 (1995). In addition, the trial court's finding that Brown's description of the circumstances relating to Robertson did not amount to a threat to H.D.B. to get him to confess was not manifestly erroneous. The only reason to bar the first statement from admission into evidence was the failure to give *Miranda* warnings. Had H.D.B. been given his *Miranda* warnings, the confession made in the bedroom of the trailer would have been admissible.

In light of the admissibility of the second confession and the evidence presented in the stipulated bench trial, the evidence sufficed to find H.D.B. guilty beyond a reasonable doubt such that a remand for retrial would not violate his right to be free from double jeopardy.

For the foregoing reasons, the judgment of the circuit court of Champaign County is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

KNECHT, P.J., and STEIGMANN, J., concur.